DAVID C. BENDER
(*pro hac vice* granted)
HEMA LOCHAN
(*pro hac vice* granted)
EARTHJUSTICE
48 Wall St., 15th Floor
New York, NY 10043
dbender@earthjustice.org
hlochan@earthjustice.org
Tel: 347-282-6493
Fax: 202-667-2356

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SOLAR UNITED NEIGHBORS, VOTE SOLAR, KAREN SCHEDLER, AND JEREMY HELMS, | ) ) ) |
| | ) |
| Plaintiffs, | ) CASE NO. |
| | ) |
| v. | ) **COMPLAINT FOR DECLARATORY** |
| | ) **AND INJUNCTIVE RELIEF** |
| SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT | ) ) ) |
| | ) |
| Defendant. | ) |

Plaintiffs, Solar United Neighbors, Vote Solar, Karen Schedler, and Jeremy Helms,

through counsel, hereby allege as follows:

## SUMMARY OF ACTION

1.      This is an enforcement action against Salt River Project Agricultural

Improvement and Power District ("SRP") for failing to implement regulations of the Federal

Energy Regulatory Commission ("FERC") as required by the Public Utility Regulatory Policies Act of 1978 ("PURPA").

2.      FERC's regulations require SRP to sell power to, and buy power from, customers who generate some of their own electricity with rooftop solar panels at nondiscriminatory prices. 18 C.F.R. §§ 292.303(a), (b), 292.304(a)(1)(ii), 292.305(a)(1)(ii).

3.      PURPA provides Plaintiffs a cause of action in this Court for SRP's failure to implement FERC's rules, including its failure to sell electricity to and buy electricity from customers with solar generation at non-discriminatory rates that comply with FERC's rules. 16 U.S.C. § 824a-3(h)(2)(B).

## JURISDICTION AND VENUE

4.      Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1331. Plaintiffs' claim for relief is provided by federal statute: 16 U.S.C. § 824a-3(h)(2)(B).

5.      Plaintiffs satisfied the prerequisites for this lawsuit in 16 U.S.C. § 824a-3(h)(2)(B) by petitioning FERC to enforce the requirements of 16 U.S.C. § 824a-3(f) and 18 C.F.R. §§ 292.303(a), 292.303(b), 292.305(a),  and 292.304 on January 12, 2024, and amended on January 22, 2024.[1]  On March 21, 2024, FERC issued a Notice of Intent Not to Act, stating "Our decision not to initiate an enforcement action means that Petitioners may themselves bring an enforcement action against SRP in the appropriate court."[2]

_____

[1] A copy of the amended petition is attached as Exhibit A.

[2] A copy of FERC's Notice is attached as Exhibit B.

6.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because the

Defendant resides in this district and the events and omissions arose in this district.

**PARTIES**

7.      Plaintiff Solar United Neighbors ("SUN") is a nonprofit organization that works

nationwide to represent the needs and interests of solar owners and supporters. SUN's address is

1350 Connecticut Avenue NW, Suite 412, Washington, DC 20036. SUN organizes solar

cooperatives as part of the organization's mission to create a new energy system with rooftop

solar as the cornerstone. Solar United Neighbors holds events and education programs to inform

people about solar consumers, maximize the value of their solar investment, and advocate for fair

solar policies on behalf of its members, including Plaintiffs Karen Schedler and Jeremy Helms.

Solar United Neighbors has organizational standing to bring this petition on behalf of its

members who are small power producers and SRP customers. Protecting its small power

producer members from discriminatory rates imposed by electric utilities is central to the mission

of Solar United Neighbors.

8.      Plaintiff Vote Solar is a non-profit organization whose mission is to make solar a

mainstream energy resource across the United States.  Since 2002, Vote Solar has worked to

expand access to solar power. Vote Solar's principal place of business is 2201 Broadway, 4th

Floor, Oakland, California 94612.  Vote Solar has associational standing to bring this action on

behalf of its members who are small power producers, including Plaintiffs Schedler and Helms.

Protecting its small power producer members from discriminatory rates imposed by electric

utilities is central to the mission of Vote Solar.

9.    Plaintiff Karen Schedler lives in Tempe, AZ and has been a residential customer of SRP since 1972. Ms. Schedler owns a 4.22 kilowatt ("kW") alternating current ("AC") rooftop solar PV system which makes her a "qualifying small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and a "qualifying facility" under 18 C.F.R. part 292. Prior to installing solar, Ms. Schedler took service under SRP's Basic Price Plan ("E-23") rate, which includes a monthly fixed charge and flat per-kilowatt hour rate. However, after interconnecting her solar in November 2019, SRP forced Ms. Schedler to take service under one of its tariffs for solar customers. Ms. Schedler takes service under SRP's E-13 Customer Generation Time of Use plan.

10.    Plaintiff Jeremy Helms and his family live in Laveen, AZ, and have been residential customers of SRP since June 2016. The Helms family owns a 6.8 kW rooftop solar PV system, which makes him a "qualifying small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and a "qualifying facility" under 18 C.F.R. part 292. Prior to installing solar, the Helms family took service under SRP's EZ-3 rate, which is an optional time of use rate consisting of an on-peak period between 3 and 6 p.m. on weekdays, and an off-peak rate during all other hours. However, after the family installed solar on their house in May 2022, SRP forced them to switch to a solar customer tariff. Mr. Helms currently takes service under the E-13 Customer Generation Time of Use plan.

11.    Defendant, SRP is an electric utility located at 1500 N. Mill Ave. Tempe, AZ 85288, that provides electrical service to approximately 1 million retail customers in a 2,900-square-mile service territory in the Phoenix metropolitan area of Arizona. SRP's full name is the

Salt River Project Agricultural Improvement and Power District. As that name suggests, SRP is a quasi-public political subdivision and water reclamation district. SRP's electricity rates are set by a board that is elected, not democratically, but based on land ownership. SRP has a monopoly over the sale of electricity within its service territory and a monopsony over the purchase of electricity from small generating systems connected to its electric distribution system. SPR uses its monopoly to sell electricity at a premium to captive customers in order to generate profits to subsidize—by approximately $100 million per year—the cost of irrigating in the desert for the small group of landowners who effectively control SRP. Defendant is a "nonregulated electric utility" within the meaning of 16 U.S.C. § 824a-3(h) that adopts its own policies and sets its own rates without oversight from a state regulatory authority, such as the Arizona Corporations Commission.

## FACTS

12.     This case involves SRP's failure to implement FERC's rules in 18 C.F.R. § 292.303, .304 and .305. SRP does not have legislative powers and does not adopt statutes or ordinances. Instead, to the extent SRP would implement FERC's rules, it would do so by adopting and imposing rates and tariffs—which it calls its "price plans"—dictating the prices and terms of service for the services it provides to customers.

13.     The particular failures of SRP to implement FERC's rules arise primarily through two changes SRP made to its rates and tariffs in 2015 and 2019. In adopting those rates, SRP cut off solar customers' ability to access rates available to customers without solar and failed to provide solar customers with any rate option that meets all requirements of FERC's rules. Solar

customers are required to select a "price plan" from among the four made available to solar customers. Each solar customer "price plan" violates at least one of the requirements set forth in FERC's rules—meaning SRP fails to implement FERC's rules by offering at least one rate tariff to solar customers that complies with all requirements of FERC's rules.

14.     SRP's current four "price plans" available to solar customers were adopted in two phases over the last nine years.

15.     In 2015, SRP created its E-27 tariff and made that tariff mandatory for customers who installed solar PV after December 8, 2014.[3] E-27 imposes (1) a higher fixed charge than the tariffs applicable to residential customers without solar; (2) an on-peak demand charge based on the customer's highest electricity consumption during any 30-minute interval during on-peak hours; and (3) a lower volumetric (i.e., per kilowatt hour) charge than SRP's flat rate plans. The intent and result of the E-27 plan was to increase charges for solar customers. After imposing E-27, "solar customers could be charged up to 65 percent more for SRP electricity than under prior plans for solar customers."[4] "Not surprisingly, applications for solar-energy systems in SRP territory decreased by between 50 and 96 percent."[5]

16.     In 2019, SRP created three additional "price plan" tariffs available to solar

---

[3] A copy of the 2015 tariff E-27 is included in this filing as Exhibit C.

[4] *Ellis v. Salt River Project Agric. Improvement and Power Dist.*, 24 F.4th 1262, 1267 (9th Cir. 2022).

[5] *Id.*

customers: "Time-of-Use Export Price Plan" ("E-13"),[6] Average Demand Price Plan ("E-15"),[7] and Residential Customer Generation Electric Vehicle Export Price Plan ("E-14").[8] SRP also revised the tariff sheet for E-27 without substantive changes.[9]

17.     Since 2019, SRP residential customers with solar must take service from SRP under one of four tariff options: E-13, E-14, E-15 or E-27. Customers with solar may not take service under the tariffs available to residential customers without solar.

18.     Each of the price plans available to residential customers with solar imposes a fixed charge that is $12.44 or $25.44 higher than the comparable plans available to customers without solar. That is, the monthly fixed charge in E-13, E-14, E-15 and E-27 available to solar customers is $32.44 per month for customers who receive service at up to 200 amps and $45.44 per month for customers receiving service above 200 amps. In contrast, the fixed charge in the tariffs available to residential customers without solar is $20 per month. Thus, for any level of electricity delivered by SRP to the customer, solar customers always pay more for that service than a non-solar customer receiving equivalent service.

19.     Solar customers are also precluded from advantageous price plans available to non-solar residential customers, including the E-21 or "EZ-3 Price Plan." EZ-3 is easier to understand and more beneficial than any of the price plans available to non-solar customers.

---

[6] A copy of the 2019 tariff E-13 is included in this filing as Exhibit D.

[7] A copy of the 2019 tariff E-15 is included in this filing as Exhibit E.

[8] A copy of the 2019 tariff E-14 is included in this filing as Exhibit F.

[9] A copy of the updated E-27 tariff is included in this filing as Exhibit G.

20.     Because solar customers can produce more electricity than they use on an instantaneous basis, and provide that power to SRP for use providing service to other customers, the solar customer "price plans" also account for those exported electricity. Tariffs E-15 and E-27 account for exports through "net metering" while tariffs E-13 and E-14 do not.

21.     "Net metering" is a billing convention for measuring and pricing bundled retail service provided by the utility to the customer by using the net of intra-billing period inflows and outflows of electricity as the billing determinant. At the end of the billing period (typically a month), a net metered customer pays for the service she received based on the net flow of electricity. Under net metering, there is no "sale" of electricity from either the utility or the customer until the inflows and outflows are netted. Intra-billing period outflows from the customer are not sales to the utility, they reduce the amount of bundled retail service the utility sells to the customer. Only the net excess (if any) electricity sent from the customer to the grid over the billing period constitutes a sale of power to the utility.

22.     Tariffs  E-13 and E-14 do not contain net-metering provisions. Instead, inflows and outflows of electricity are separated. Charge for retail service is based on all inflows. Credits for sales of electricity from the customer to SRP are priced at a rate unrelated to the retail service the customer receives. As SRP describes, under the non-net metered E-13 and E-14 tariffs, "[t]he amount of energy used in [a customer's] home is instantaneously monitored and recorded by [their] meter [….] This is different from net metering – used on the Customer Generation and

Average Demand plans – in which the excess kWh is subtracted from the delivered kWh to arrive at a net kWh number."[10]

### FERC's Rules Require SRP to Provide Electricity Service to Customers with Solar Generation at Non-Discriminatory Rates

23.     PURPA was enacted in 1978 as a free market reform to introduce a bit of competition into the moribund monopoly utility industry that often wields undue control over the state and local regulators who purportedly oversee such utilities.

24.     PURPA provides customers a right to self-generate electricity with renewable resources or co-generation, simultaneously providing a small amount of competition to utilities' monopoly over supply and reducing the nation's dependence on traditional fossil fuels.[11]  To prevent utilities from entrenching their monopoly power and undermining Congress's goals, PURPA requires utilities to continue to provide supplemental power to self-generating customers and prohibits utilities from charging discriminatory rates for such service.[12] And to make sure utilities cannot strand excess power produced by self-generating customers and undermine the economics of self-generation, Congress also required utilities to purchase any electricity put to them by customers at non-discriminatory prices.[13]

---

[10] Salt River Project, *Time-of-Use Export Price Plan for solar customers*, https://www.srpnet.com/price-plans/residential-electric/solar/time-of-use-export.

[11] H.R. Rep. No. 95-496(IV), 1978 U.S.C.C.A.N. 8454, 1977 WL 9621, at 14 (1978*); FERC v. Mississippi,* 456 U.S. 742, 750–51 (1982).

[12] 16 U.S.C. §§ 824a-3(a), (c); *FERC v. Mississippi*, 456 U.S. at 750–51; see also *Joint Explanatory of the Committee of Conference*, P.L. 78-617, reprinted in FERC Statutes and Regulations ¶ 5151, at 5105–06; 45 Fed. Reg. 12,214, 12,228–29 (Feb. 25, 1980).

[13] 16 U.S.C. § 824a-3(a)(2), (b)(2).

25.     Congress directed FERC to adopt rules to implement PURPA "as it deems necessary to encourage cogeneration and small power production...."[14] Congress then required state regulatory authorities and nonregulated electric utilities to implement FERC's rules.[15]

26.     Consistent with Congress's goals and direction, FERC adopted rules that require every electric utility to sell electric energy and capacity to, and buy electric energy and capacity from, customers with small renewable generation, including solar panels, which FERC's rules call "qualifying facilities."[16]

27.     Like the statute, FERC's rules require rates charged to qualifying facilities to be non-discriminatory compared to the rates charged for electricity to customers without generation.[17] FERC's rules define a non-discriminatory rate as meeting three criteria: (1) it must be based on "accurate data," (2) it must be established based on "consistent systemwide costing principles," and (3) it must "apply to the utility's other customers with similar load or other cost-related characteristics."[18]

28.     FERC's rules also require utilities to purchase at prices that do not discriminate compared to the price the utility pays to buy from another generator or to produce power itself.[19] For qualifying facilities built after 1978—which includes all of SRP's residential solar

[14] 16 U.S.C. § 824a-3(a).

[15] 16 U.S.C. § 824a-3(f).

[16] 18 C.F.R. §§ 292.101(b)(1), 292.203(a), 292.303(a), (b).

[17] 18 C.F.R. § 292.305(a)(1)(ii).

[18] 18 C.F.R. § 292.305(a)(2).
[19] 18 C.F.R. § 292.304(a)(1)(ii).

customers—FERC's rules require SRP to buy power at a price equal to the utility's full "avoided cost."[20] "Avoided costs" are SRP's "incremental cost(s) of alternate electric energy."[21]

29.     SRP is not implementing FERC's rules. SRP is not selling power to residential customers with solar—who are, by definition, qualifying facilities—at nondiscriminatory rates or buying power from those customers at a price equal to SRP's full avoided cost.

30.     SRP requires residential solar customers to receive supplemental power from SPR under E-13, E-14, E-15 or E-27. However, none of those options complies with all applicable requirements under FERC's rules.

31.     Each of the tariffs available to solar customers imposes a higher monthly fixed charge than the comparable price plans for non-solar customers. As a result, at any level of electricity service, a solar customer pays a higher charge than a non-solar customer receiving equivalent service from SRP. That higher monthly fixed charge does not satisfy any of the three criteria in FERC's rules for a non-discriminatory charge.

32.     The rate tariffs that include a net metering component—E-15 and E-27—do not involve purchases of electricity from the solar customer within the billing period. However, they do impose a demand charge that most residential customers find difficult to understand and respond to. The two rate tariffs without any net metering component—E-13 and E-14— omit a

---

[20] 18 C.F.R. § 292.304(b)(2).

[21] H.R. Rep. No. 95-1750, at 98. See also 18 C.F.R. 292.101 (defining avoided costs as "the incremental costs to an electric utility of electric energy or capacity or both which, but for the purchase from the qualifying facility or qualifying facilities, such utility would generate itself or purchase from another source.").

demand charge for electricity provided by SRP to the customer, but purchase the excess electricity generated by the solar customer at only 2.81 cents per kilowatt hour, which is lower than SRP's full avoided cost.

33.     SRP also does not provide a price plan to solar customers that is the equivalent of EZ-3 that is available to all non-solar customers.

34.     Thus, all solar customers must pay a higher monthly fixed charge than non-solar customers and must choose between an inconvenient demand charge or a price for the power they sell to SRP that is lower than SRP's avoided costs. Residential solar customers do not have access to both supplemental power from SRP at non-discriminatory prices and the ability to sell power to SRP at a price equal to SRP's full avoided cost.

## FIRST CLAIM FOR DECLARATORY AND EQUITABLE RELIEF
### 16 U.S.C. § 824a-3(h)(2)

35.     Plaintiffs incorporate paragraphs 1 through 34 above.

36.     SRP failed to implement FERC's rules because it failed to provide residential solar customers access to at least one tariff that meets all of the requirements of FERC's rules. All tariffs available to solar customers impose a discriminatory higher fixed charge than imposed for non-solar customers. Additionally, the tariffs available to solar customers do not provide a price for power sold to SRP that is equal to SRP's avoided costs. To avoid selling power to SRP at a price below SRP's avoided costs, solar customers must opt for service under E-15 or E-27, which account for exported power as reducing the amount of retail service the customer

purchases from SRP rather than as sales of power to SRP, but also impose a confusing and difficult demand charge.

37.     And SRP fails to make its EZ-3, or an equivalent rate available to residential customers with solar.

38.     Solar customers have no option to receive supplemental electricity from SRP at the same rates available to non-solar customers and also sell excess power at prices equal to SRP's full avoided costs. That also fails to implement 18 C.F.R. § 292.303, .304, and .305.

39.     Residential solar customers, including plaintiffs Schedler and Helms, are qualifying facilities pursuant to 18 C.F.R. § 292.201-.211. Their generating systems are smaller than 1 megawatt, which meets the size requirement in 18 C.F.R. § 292.204(a). Additionally, because of their size, they are not required to register with FERC pursuant to 18 C.F.R. § 292.203(d)(1). And the generating systems use solar, a renewable resource pursuant to 18 C.F.R. § 292.204(b)(1).

40.     Because SRP fails to offer solar customers the opportunity to obtain supplemental electricity at non-discriminatory rates and to sell excess power to SRP at a price equal to SRP's full avoided costs, SRP fails to implement FERC's rules as required by 16 U.S.C. § 824a-3(f).

WHEREFORE, Plaintiffs request the Court order the following relief:

A.     Order SRP to implement FERC's rules pursuant to 16 U.S.C. § 824a-3(h)(2)(B).

B.     Declare that by failing to offer a price plan that sells electric energy and capacity to residential rooftop solar customers at non-discriminatory rates, SRP fails to implement 18 C.F.R.

§§ 292.303 and 292.305(a) and enjoin SRP to offer service to residential customers with solar under all price plans available to non-solar residential customers.

C.      Declare that by failing to buy electricity sold to SRP by rooftop solar customers at a price equal to SRP's full avoided costs, SRP failed to implement 18 C.F.R. §§ 292.303 and 292.304(a)(1)(ii) and (b)(2) and enjoin SRP to purchase electricity from residential customers at its full avoided costs.

D.      Order Defendant to disgorge the difference between the money it collected under the residential solar customers' price plans and what it would have collected under the price plans appliable to non-solar customers, including the difference between monthly fixed charges.

E.      Order Defendant to pay Plaintiff's attorneys' fees and costs to the extent provided by law.

F.      Order such other relief as the Court deems just and equitable.

Respectfully submitted,

EARTHJUSTICE

/s/ David C. Bender
DAVID C. BENDER (admitted pro hac vice)
dbender@earthjustice.org
Tel: 202-667-4500 ext. 5228/Fax: 202-667-2356

HEMA LOCHAN (admitted pro hac vice)
hlochan@earthjustice.org
Tel: 347-282-6493
Fax: 202-667-2356

Attorneys for Plaintiffs

# EXHIBIT A

UNITED STATES OF AMERICA
BEFORE THE
FEDERAL ENERGY REGULATORY COMMISSION

|  |  |  |
|---|---|---|
| Karen Schedler, | ) | |
| Jeremy Helms, Solar United | ) | |
| Neighbors and Vote Solar | ) | Docket No. EL24-54 |
|  | ) | |

**FIRST AMENDED PETITION FOR ENFORCEMENT UNDER THE
PUBLIC UTILITY REGULATORY POLICIES ACT OF 1978**

Pursuant to Section 210(h)(2)(B) of the Public Utility Regulatory Policies Act

of 1978, as amended ("PURPA"), 16 U.S.C. § 823a-3(h)(2)(B), Karen Schedler,

Jeremy Helms, Solar United Neighbors, and Vote Solar (together, "Petitioners")

petition the Federal Energy Regulatory Commission ("Commission" or "FERC") to

initiate an enforcement action to compel the Salt River Project ("SRP") to properly

implement the Commission's PURPA regulations. Specifically, the Commission

should bring an action to compel SRP to offer non-discriminatory rates for the sale

of electricity to, and purchase from, residential customers with rooftop solar. SRP's

current policies for residential customer solar violate the Commission's rules and

have decimated what was previously a robust market for solar. If the Commission

declines enforcement, Petitioners respectfully request that the Commission issue a

decision finding that SRP's rates for customers who self-generate with rooftop solar

violate PURPA.

## Background

### I.   The Requirements of PURPA § 210(a) and the Commission's Implementing Rules.

Congress enacted PURPA to overcome obstacles imposed by entrenched utility monopolies for non-utility generation, including customer-sited small renewable generation.[1] The Commission then promulgated rules to implement PURPA's command "to encourage cogeneration and small power production"[2] and ensure that rates for purchase of electricity from, and sale of electricity to, small power production facilities are "just, reasonable … in the public interest" and nondiscriminatory towards the non-utility power producers.[3] Those rules apply to residential customers with rooftop solar panels.[4] State regulatory authorities and nonregulated utilities must then implement the Commission's rules by taking actions facially consistent with the rules.[5] If they fail to do so, the Commission can

---

[1] *Am. Paper Institute v. Am. Elec. Power Serv. Co.,* 461 U.S. 402, 405 (1983) (PURPA was intended to counteract electric utilities' traditional reluctance to purchase power from and to sell power to non-utility power producers and self-generators); *Californians For Renewable Energy v. Cal. Pub. Utils. Comm'n,* 922 F.3d 929, 932 (9th Cir. 2019) (quoting *Indep. Energy Producers Ass'n, Inc. v. Cal. Pub. Utils. Comm'n,* 36 F.3d 848, 850 (9th Cir. 1994)).

[2] 16 U.S.C. § 824a-3(a).

[3] *Id.* § 824a-3(a)-(c); Small Power Production and Cogeneration Facilities; Regulations Implementing Section 210 of the Public Utility Regulatory Policies Act of 1978, Final Rule, 45 Fed. Reg. 12,214 (Feb. 25, 1980); *Vote Solar v. City of Farmington,* 2 F.4th 1285, 1287–88 (10th Cir. 2021) (describing PURPA's requirements).

[4] Under 16 U.S.C. § 796(17)(A), (C) and (D), qualifying small power producers include residential customers with rooftop solar photovoltaic panels. *See also* 18 C.F.R. §§ 293.203(a), 292.201(a)(1), (d)(1) (generation smaller than 1 MW exempt from registration), 292.204(b)(1)(i) (renewable resource fuel qualification); *In re Westar,* 460 P.3d 821, 824 (Kan. 2020) (PURPA applies to "residential customers producing solar power"); *Sun Edison LLC,* 129 FERC ¶ 61,146 at P 18 (2009).

[5] 16 U.S.C. § 824a-3(f); *Vote Solar,* 2 F.4th at 1289–90.

enforce PURPA's requirements pursuant to section 210(h). If the Commission declines to initiate its own enforcement action, a residential customer with rooftop solar can enforce PURPA in the appropriate United States District Court.[6]

## II.   Description of Petitioners and SRP

Petitioner Karen Schedler lives in Tempe, AZ and has been a residential customer of SRP since 1972. Ms. Schedler owns a 4.22 kilowatt ("kW") alternating current ("AC") rooftop solar PV system. Prior to installing solar, Ms. Schedler took service under SRP's Basic Price Plan ("E-23") rate, which is SRP's basic price plan that includes a monthly fixed charge and flat per-kilowatt hour rate. However, after interconnecting her solar in November 2019, SRP forced Ms. Schedler to take service under one of its tariffs for solar customers. Ms. Schedler takes service under SRP's E-13 Customer Generation Time of Use plan.

Petitioner Jeremy Helms and his family live in Laveen, AZ, and have been residential customers of SRP since June 2016. The Helms family owns a 6.8 kW rooftop solar PV system. Prior to installing solar, the family took service under SRP's EZ-3 rate, which is an optional time of use rate consisting of an on-peak period between 3 and 6 p.m. on weekdays, and an off-peak rate during all other hours. However, after the Helms family installed solar on their house in May 2022, SRP forced them to switch to a solar customer tariff. Mr. Helms currently takes service under the E-13 Customer Generation plan.

---

[6] 16 U.S.C. § 824a-3(h)(2); *Vote Solar*, 2 F.4th at 1289–90; Policy Statement Regarding the Commission's Enforcement Role Under Section 210 of the Pub. Util. Reg. Policies Act of 1978, 23 FERC ¶ 61,304 at P 61,644 (1983).

Petitioners Schedler and Helms are qualifying small power producers pursuant to 16 U.S.C. § 796(17)(D) and qualifying facilities under the Commission's rules and are therefore authorized to bring this petition for enforcement against SRP.[7]

Solar United Neighbors is a nonprofit organization that works nationwide to represent the needs and interests of solar owners and supporters. SUN organizes solar co-ops as part of the organization's mission to create a new energy system with rooftop solar at the cornerstone. Solar United Neighbors holds events and education programs to help people become informed solar consumers, maximize the value of their solar investment, and advocate for fair solar policies on behalf of its members, including Karen Schedler and Jeremy Helms. Solar United Neighbors has organizational standing to bring this petition on behalf of its members who are small power producers.

Vote Solar is a non-profit organization whose mission is to make solar a mainstream energy resource across the United States. Since 2002, Vote Solar has worked to lower solar power costs and expand solar power access. Vote Solar's principal place of business is 360 22nd Street, Suite 730, Oakland, California 94612. Vote Solar advocates on behalf of its members, including Karen Schedler and Jeremy Helms. Vote Solar has organizational standing to bring this petition on behalf of its members who are small power producers.

---

[7] *See supra* note 4, above.

SRP is an electric utility located at 1500 N. Mill Ave. Tempe, AZ 85288, that provides electrical service to approximately 1 million retail customers in a 2,900-square-mile service territory in the Phoenix metropolitan area of Arizona.[8] SRP's full name is the Salt River Project Agricultural Improvement and Power District.[9] As that name suggests, SRP is a political subdivision and water reclamation district.[10] SRP's electricity rates are set by a board that is elected based on land ownership, rather than democratically.[11]

SRP was originally created and intended as a public entity primarily to obtain inexpensive bond debt, but "remain[s] essentially [a] business enterprise[], created by and chiefly benefiting a specific group of landowners."[12] "The District does not function to 'serve the whole people,' but operates for the benefit of those inhabitants of the district who are private owners" of property.[13] SRP sells electricity at a premium to captive customers in order to generate profits to subsidize—by approximately $100 million per year—the cost of irrigating in the

---

[8] Proposed Adjustments to SRP's Standard Electric Price Plans Effective with the May 2019 Billing Cycle at 1. A copy of this document is included in this filing as w 1.

[9] *Id.*

[10] Ariz. Rev. Stat. § 48-2302; *Ball v. James*, 451 U.S. 355, 357 (1981).

[11] Ariz. Rev. Stat. § 48-2383; *Ball*, 451 U.S. at 357.

[12] *Ball*, 451 U.S. at 368 (citing *Nieder v. Salt Riv. Project Agric. Improvement and Power Dist*, 121 Ariz. 331, 590 P.2d 447; *Uhlmann v. Wren*, 97 Ariz. 366, 374, 401 P.2d 113, 124; *Local 266, I.B.E.W. v. Salt River Project Agricultural Improvement and Power Dist.,* 78 Ariz. 30, 41-42, 275 P.2d 393, 402).

[13] *Ball,* 451 U.S. at 368 (quoting *Local 266, I.B.E.W. v. Salt River Agricultural Improvement and Power Dist.*, 78 Ariz. 30, 44, 275 P.2d 393, 402-03).

desert for the small group of landowners who control SRP.[14] The relationship
between electricity customers and SRP "is essentially that between customer and a
business enterprise from which they buy"—and not between the people and a
representative government body.[15]

SRP's board of directors would constitute a "state regulatory authority"
within the meaning of 16 U.S.C. § 796(21) if it were a "municipality having
jurisdiction to regulate rates and charges for the sale of electric energy to customers
within the… municipality."[16] However, the SRP does not actually "regulate rates."
Instead, it unilaterally sets its own rates.[17] Therefore, SRP is a "nonregulated
electric utility." However, whether SRP constitutes a "nonregulated electric utility"
or a "state regulatory authority" over its own rates, the violations at issue are the
same. Either way, SRP must comply with the Commission's rules and its failure to
do so is subject to an enforcement action.[18]

### III.    SRP's Rates for Residential Customers with Rooftop Solar

SRP forced customers with rooftop solar onto different rates through two
steps. In 2015, SRP created E-27 tariff for customers who installed solar PV after
December 8, 2014.[19] E-27 imposed an on-peak demand charge, a lower volumetric

---

[14] *Solar City v. Salt River Project Agric. Improvement and Power Dist.*, 2015 WL 6503439
*1 (D.Ariz. Oct 27, 2015).

[15] *Ball,* 451 U.S. at 370.

[16] 16 U.S.C. § 796(7), (15).

[17] *See Ellis*, 24 F.4th at 1275 (rejecting the "filed rate doctrine" because SRP's board sets its
rates unilaterally, rather than through regulation).

[18] 16 U.S.C. § 824a-3(f), (h)(2).

[19] A copy of the 2015 tariff E-27 is included in this filing as Exhibit 2.

(i.e., per kilowatt hour) charge, and a higher fixed charge than the tariffs applicable to residential customers without solar. As a result of that change, "solar customers could be charged up to 65 percent more for SPR electricity than under prior plans for solar customers."[20] "Not surprisingly, applications for solar-energy systems in SRP territory decreased by between 50 and 96 percent."[21]

In 2019, SRP created three additional tariffs for solar customers: "Time-of-Use Export Price Plan" ("E-13"),[22] Average Demand Price Plan ("E-15"),[23] and Residential Customer Generation Electric Vehicle Export Price Plan ("E-14").[24] SRP also updated the tariff sheet for E-27 with non-substantive changes.[25] Since 2019, SRP customers with solar can select between the E-13, E-14, E-15 or E-27 tariffs, but may not take service under the tariffs applicable to residential customers without solar.

All of the solar customer tariffs impose higher fixed charges and preclude solar customers from benefits available under tariffs for non-solar customers. The monthly fixed charge in each of the solar customer tariffs is $32.44 per month for customers who receive service at up to 200 amps and $45.44 per month for customers receiving service above 200 amps. The fixed charge in the tariffs

---

[20] *Ellis*, 24 F.4th at 1267.

[21] *Id.*

[22] A copy of the 2019 tariff E-13 is included in this filing as Exhibit 3.

[23] A copy of the 2019 tariff E-15 is included in this filing as Exhibit 4.

[24] A copy of the 2019 tariff E-14 is included in this filing as Exhibit 5.

[25] A copy of the updated E-27 tariff is included in this filing as Exhibit 6.

available to residential customers without solar is $20 per month. Because the
kilowatt hour charge and demand charge in the tariffs for solar customers are
equivalent to those in the tariffs for non-solar customers, solar customers must pay
an additional $12.44 or $20.44 each month compared to non-solar customers for the
same amount of electricity service consumption.

In addition, a solar customer must choose between E-27, which includes a
demand charge, or a low 2.81 cent/kWh credit under the E-13, E-14, and E-15 tariffs
for electricity the customer sends to SRP. Either option is detrimental to solar
customers. On the one hand, demand charges are notoriously difficult for residential
customers.[26] On the other hand, 2.81 cents is below SRP's marginal costs of
electricity and undercompensates solar customers for the electricity they export.

SRP also precludes solar customers from taking service under more
advantageous plans available to non-solar residential customers, including the E-21
"EZ-3 Price Plan." EZ-3 is a time-of-use tariff in which each customer picks a 3-hour
on-peak period—either 3–6 p.m. or 4–7 p.m. The EZ-3 tariff "provides a stronger
price signal during a fewer number of hours" while providing lower cost electricity
"over 90 percent of the hours in each week" annually.[27] EZ-3 "is the default turn-on

---

[26] *See e.g.*, Letter from Andy Beshear, Kentucky Attorney General, to Jeff Herbert, et al.,
Glasgow KY Electric Plant Board (Aug. 25, 2016).(summarizing citizen complaints about
residential demand charge rate design), included in this filing as Exhibit 7; *ComEd, Exelon
Drop Some Provisions in Controversial Bill*, Chicago Tribune (Nov. 22, 2016) (Illinois utility
Exelon/ComEd dropped proposed residential demand charge in response to criticism from
the Governor calling that rate design "insane"), https://www.chicagotribune.com/politics/ct-
state-power-legislation-update-met-20161122-story.html.

[27] Exhibit 1, Proposed Adjustments to SRP's Standard Electric Price Plans Effective with
the May 2019 Billing Cycle at 41.

rate for new customers" without solar.[28] However, solar customer cannot take service under EZ-3. Instead, the only time-of-use rates available to solar customers are E-27 and E-14, which include longer and seasonally changing on-peak periods. The on-peak period for E-27 and E-14 is six hours long, 2–8 p.m., during May through October. During November through April, there are two on-peak periods: from 5–9 a.m. and again from 5–9 p.m. The longer and changing on-peak periods require more diligent and persistent load management to achieve bill savings, compared to the constant and shorter on-peak periods in the EZ-3 tariff. As SRP's website explains, the EZ-3 rate design is more beneficial to customers because it requires the customer to "limit your energy use during the just three on-peak hours" instead of "during a larger window of on-peak hours" in the rate designs applicable to solar customers.[29] Additionally, because the E-27 and E-14 on-peak periods for solar customers are less coincident to solar production than EZ-3, solar customers' generation does not reduce their on-peak charges to the same extent it would under the EZ-3 tariff.

In summary, SRP's residential solar customers (1) must pay higher fixed charges than non-solar customers; (2) must choose between E27's difficult-to-manage demand charge or the low 2.8 cents/kWh export credit under E-13, E-14 and E-15; and (3) cannot access the more beneficial and easier to manage EZ-3 rate design.

---

[28] *Id.*

[29] SRP EZ-3 Price Plan, https://www.srpnet.com/price-plans/residential-electric/ez-3 (last accessed Jan. 8, 2024).

SRP's residential solar tariffs were so controversial and disruptive that they spurred two separate anti-trust suits.[30] However, neither suit has reached a decision on the merits. The first case was settled while an appeal of a procedural issue, unrelated to the merits of the solar tariffs, was before the Supreme Court.[31] A subsequent case was initially dismissed[32], but then partially revived by the Ninth Circuit in January 2022, and then apparently settled by the parties in early 2023.[33] While the courts' findings in that litigation provides general background about SRP and its solar rates, the holdings relate to monopolization in violation of the Sherman Act, not the PURPA violations at issue in this petition.[34]

## IV.    Communications

Please address all notices and communications regarding this petition to the following persons who are also designated for service in this proceeding:

David Bender                          Hema Lochan

---

[30] *See Ellis*, 24 F.4th 1262; *SolarCity*, 2015 WL 6503439.

[31] Ryan Randazzo, *SRP settlement with Tesla could make solar, batteries more affordable*, AZ Central (Mar. 5, 2018), https://www.azcentral.com/story/money/business/energy/201803/05/srp-settlement-tesla-could-make-solar-batteries-more-affordable/396385002/; *see also Salt River Project Agric. Improvement and Power Dist. v. SolarCity*, 138 S.Ct. 499 (2017) (granting certiorari), 138 S.Ct. 1323 (2018) (dismissing certiorari).

[32] *Ellis v. Salt River Project Agric. Improvement and Power Dist.*, 432 F.Supp.3d 1070 (D.Ariz. 2020).

[33] *Ellis*, 24 F.4th 1262; *see also Ellis v. Salt River Project Agric. Improvement and Power Dist.*, 2022 WL 3552392 (D.Ariz. 2022) (dismissing certain claims again after remand); Stipulation of Dismissal, *Ellis v. Salt River Project Agric. Improvement and Power Dist.*, Case No. 2:19-cv-01228-SMB (D.Ariz., Jan. 31, 2023), https://storage.courtlistener.com/recap/gov.uscourts.azd.1156351/gov.uscourts.azd.1156351.65.0.pdf.

[34] 16 U.S.C. § 2603 (PURPA does not affect the applicability of antitrust laws to any electric utility).

| | |
|---|---|
| Earthjustice | Earthjustice |
| 3916 Nakoma Road | 48 Wall Street, 15th Floor |
| Madison, WI 53711 | New York, NY 10005 |
| Phone: (202) 667-4500 | Phone: (347) 282-6493 |
| Fax: (202) 667-2356 | Fax: (347) 282-6493 |
| Email: dbender@earthjustice.org | Email: hlochan@earthjustice.org |

## V.   Petition

Petitioners respectfully request that the Commission institute an

enforcement action under Section 210(h) of PURPA, 16 U.S.C. § 824a-3(h), to

compel SRP to:

- Implement 18 C.F.R. §§ 292.303(b) and 292.305(a) by selling energy and capacity to residential solar customers at non-discriminatory prices; and

- Implement 18 C.F.R. §§ 292.303(a) and 292.304 by buying electricity generated by residential solar customers at non-discriminatory, full avoided cost rates.

If the Commission declines to bring its own enforcement action, Petitioners

respectfully request that the Commission issue a declaratory ruling that SRP's solar

customer tariffs violate the foregoing rules.[35]

## VI.   Argument

SRP's treatment of residential solar customers violates PURPA in three ways:

1. Imposing a higher monthly fixed charge on solar customers violates

PURPA's anti-discrimination provision. 16 U.S.C. § 824a-3(c)(2); 18 C.F.R. §§

292.303(b), 292.305(a). SRP forces solar customers to pay $12.44 (service at 200

amps or less) or $25.44 (service at greater than 200 amps) more each month than

non-solar customers for the same amount of SRP-provided electricity.

---

[35] *See e.g., In re Windham Solar LLC*, 157 FERC ¶ 61,134 at P 2 (2016).

2. The exclusion of solar customers from the more beneficial EZ-3 tariff also violates PURPA's anti-discrimination provision. 16 U.S.C. § 824a-3(c)(2); 18 C.F.R. §§ 292.303(b), 292.305(a).

3. The 2.8 cent/kWh reimbursement for solar customers' exported electricity under E-13, E-14 and E-15 is lower than SRP's full avoided costs, which violates 18 C.F.R. §§ 292.303(a), 292.304.[36]

### 1.   SRP's Higher Fixed Charge for Solar Customers Unlawfully Discriminates.

SRP's treatment of solar customers violates the Commission's rule prohibiting discrimination "in comparison to rates for sales to other customers served by the electric utility."[37] As Order 69 explained, as a general rule utilities should sell electricity to qualifying facilities at the rate "that would be charged to the class to which the qualifying facility would be assigned if it did not have its own

---

[36] While a higher value for exports is available pursuant to E-27, that tariff includes a demand charge that most residential customers find difficult to manage. Imposing a demand charge on customers with solar but not on customers without would discriminate. A qualifying facility cannot be forced in a Catch-22 choice between a less unfavorable rate design or a price for electricity sold to the utility that is less than the utility's avoided cost. *Winding Creek Solar LLC v. Peterman*, 932 F.3d 861, 865–66 (9th Cir. 2019) (a utility does not satisfy PURPA by providing a QF multiple options when neither option is PURPA-compliant).

[37] 18 C.F.R. §§ 292.303(b), 292.305(a)(1)(ii). The exception in 18 C.F.R. § 292.303(b) does not apply because the Commission has not waived SRP's obligation to sell energy and capacity to qualifying facilities. Under 18 C.F.R. § 292.305(b), a utility must provide supplementary power, back-up power, maintenance power, and interruptible power as unbundled services, with pricing specifically determined for those service without assuming forced outages of other production changes occur simultaneously or during system peak. 18 C.F.R. § 292.305(b), (c); 45 Fed. Reg. at 12,228–29. The requirement to sell electricity at non-discriminatory rates in 18 C.F.R. § 292.305(a)(1), and the requirement to sell the additional unbundled services in 18 C.F.R. § 292.305(b) are separate, but complimentary, rights.

generation."[38] However, there is a narrow path for utilities to charge a different rate to qualifying facilities if it meets three criteria: the rate "must (1) be 'based on accurate data'; (2) be established using 'consistent system wide costing principles'; and (3) 'apply to the utility's other customers with similar load or other cost-related characteristics.'"[39] SRP's E-13, E-14, E-15 and E-27 tariffs for solar customers do not meet those criteria. The higher monthly fixed charge imposed through the tariffs for solar customers is not based on accurate data, was not established using consistent systemwide costing principles, and is not applied to other customers with similar load or other cost characteristics.

### a. SRP's Solar Rates Are Not Based on Accurate Data.

The requirement to base a different rate for qualifying facilities on "accurate data" refers to load data *of the qualifying facility*.[40] Therefore, "accurate data" for SRP's solar customers means the net loads actually served by the utility, not their

---

[38] 45 Fed. Reg. at 12,228.

[39] *Bankston, et al. v. Ala. Pub. Serv. Comm'n*, 175 FERC ¶ 61,181 (2021) (Glick and Clements, concurring (quoting 18 C.F.R. § 292.305(a)(2))); *see also Indus. Cogenerators*, 43 FERC ¶ 61,545, 62,352 (1988) (later vacated as moot); *Indus. Cogenerators*, 61 FERC ¶ 61,202 (1992).

[40] *See* Small Power Production and Cogeneration—Rates and Exemptions, Notice of Proposed Rulemaking, 44 Fed. Reg. 61,190, 61,198 (Oct. 24, 1979) (noting that while rates are typically determined from load data from particular customers, utilities lack sufficient data of the loads of QFs and, therefore, rates for sales to QFs should be at least as favorable as those to non-QFs with comparable load characteristics); Staff Paper Discussing Commission Responsibilities to Establish Rules Regarding Rates and Exemptions for Qualifying Cogeneration and Small Power Production Facilities Pursuant to Section 219 of the Public Utility Regulatory Policies Act of 1978, 44 Fed. Reg. 38,863, 38,868 (July 3, 1979) (noting the lack of load data regarding "the service requirements of QFs, and thus the costs imposed on the utility" by QFs).

usage before installing solar or gross consumption behind the meter.[41] Nor does it mean load data of customers without solar. SRP did not use accurate solar customer data to set the rates in the E-13, E-14, E-15, or E-27 tariffs. Instead, SRP used load data from high-use, non-solar, residential customer in the E-26 rate class and set the solar rates to generate the same amount of overall revenue as the high-use, non-solar customer.[42]

Rates based on the revenue SRP would receive from a high-use non-solar customer are not rates based on accurate load data of solar customers. In fact, SRP admits that solar customers have "significantly" lower average consumption of only 5,894 kWh per year, compared to the 21,065 kWh SRP used to derive the solar customer tariffs.[43] SRP's load data also show that solar customers have lower

---

[41] *Bankston v. Ala. Pub. Serv. Comm'n*, 175 FERC ¶ 61,181 , Concurring Opinion at P 4 n.13 (2021).

[42] NERA Consulting, *Review of Salt River Project's Proposed Residential Customer Generation Price Plan* ("NERA Review") at 8, included in this filing as Exhibit 8; Sussex Economic Advisors, *Review of Proposed Adjustments to Salt River Project's Standard Electric Price Plans* ("Sussex Report") at 57 ("SRP's revenue targets for the E-27 price plan were based on Strata 4 through 6 in the E-26 price plan"; solar rates designed to be "revenue neutral on a pre-solar basis" to the revenue produced by the top 101,995 customers taking service on E-26), included in this filing as Exhibit 9; The Brattle Group, *An Evaluation of SRP's Electric Rate Proposal for Residential Customers with Distributed Generation* ("Brattle Review") at 15, included in this filing as Exhibit 10; Exhibit 1, Proposed Adjustments to SRP's Standard Electric Price Plans Effective with the May 2019 Billing Cycle at 30.

[43] *See* 2015-03-26-Typical_Solar_Customer_(30-Min_kW)-Excel.xls "Summary" tab, included in this filing as Exhibit 11; 1/28/19 Proposed Adjustments to SRP's Standard Electric Price Plans Interview Transcript ("1/28/19 Interview Tr.") at 315, included in this filing as Exhibit 12. Note that while solar customers have lower use and lower costs than non-solar customers, based on averages of those two groups, solar customer loads are still within the wide ranges of all residential customers. *See* MCS 2012 Tables with LOLP-Excel.xls, included in this filing as Exhibit 13, "Table 4" tab, rows 6-11, "Table 5 (2)" tab, rows 6-11 (showing use by stratum); Exhibit 1, Proposed Adjustments to SRP's Standard Electric Price Plans Effective with the May 2019 Billing Cycle at 38 ("Residential customer

14

contribution to cost-causing four coincident peak and non-coincident peak loads SRP uses as cost-causing allocators in its cost of service studies.[44]

Moreover, even if the requirement to use "accurate data" could be met with load data from non-solar customers, the data SRP used would still be inaccurate. Contrary to SRP's assumption that the customers "most likely to" install solar were high-use, non-solar customers taking service under the E-26 rate[45], most customers who installed solar actually received service under the Basic Price Plan (E-23) before installing solar PV and only 27 percent received service under E-26.[46] Average use of E-23 Basic Price Plan customers is 13,114 kWh, compared to the 21,065 kWh per customer average for the non-solar customers SRP used to derive the solar customer rates.[47]

SRP's higher fixed charges for solar customers are not based on the accurate data of those customers' loads required to justify imposing different rates for those

---

usage ranges from less than 100 kWh per month to more than 50,000 kWh per month."), 44 (electricity use by non-solar customers on E-21 by stratum), 51 (electricity use by non-solar customers on standard E-23 by stratum), 57 (electricity use by non-solar customers on E-27 by stratum); Exhibit 9, Sussex Report at 57.

[44] Salt River Project Agricultural Improvement and Power District, Cost Allocation Study in Support of Proposed Adjustments to SRP's Standard Electric Price Plans Effective with the May 2019 Billing Cycle ("2019 Cost Allocation Study") at 15, 21 (E-27 solar customer average 4CP and NCP by customer lower than any non-solar residential class (EZ-3, E-23, E-24, E-26)). A copy of this document is included in this filing as Exhibit 14.

[45] Exhibit 9, Sussex Report at 57.

[46] Exhibit 8, NERA Review at 4.

[47] Exhibit 9, Sussex Report at 57; Unbundled Revenue Analysis in Support of Proposed Adjustments to SRP's Standard Electric Price Plans Effective with The March 2015 Billing Cycle ("Dec. 2014 URA") at 15, 17 (Dec. 12, 2014), included in this filing as Exhibit 15.

15

customers.[48]  The charges were designed to recoup the same revenue from solar customers as from high-use non-solar customers, rather than based on accurate data of solar customers' actual loads and costs.

> ### b.  The Solar Customer Tariffs Are Not Based on Consistent Systemwide Costing Principles.

Tariffs E-13, E-14, E-15, and E-27 are also not based on "consistent systemwide costing principles."[49] The phrase "costing principles" refers to the state regulatory authority or nonregulated utility's "approved way of determining the customer's cost responsibility"[50] and includes both the assignment of cost responsibility between classes and customers (class cost-of-service) and the policy choices in how service is priced, such as selecting which rate components to use and setting the price for each component to produce the class revenue target (rate design). That requires that any "subsidy" that a non-solar customer receives must be afforded to solar customers as well.[51] For example, utilities often contend that customers who reduce their electricity consumption fail to cover their "share" of fixed costs collected through volumetric charges. However, even if that were true, it is true of all customers who use less than the class average volume of electricity. A rate that collects more revenue from customers who reduce their consumption by

---

[48] 18 C.F.R. § 292.305(a)(2); *Bankston, et al. v. Ala. Pub. Serv. Comm'n*, 175 FERC ¶ 61,181 at P 4 n.13 (2021).

[49] 18 C.F.R. § 292.305(a)(2).

[50] Staff Paper, 44 Fed. Reg. at 38,868.

[51] 45 Fed. Reg. at 12,228 (the prohibition on discriminatory rates precludes utilities from singling out self-generating customers to "lose any interclass or intraclass subsidies to which it might have been entitled had it not generated part of its electric energy needs itself.").

self-generating with solar, but not from customers who receive the same amount of electricity from the utility but lower their consumption in other ways, discriminates.

SRP's rates for solar customers diverge from consistent systemwide costing principles in two ways. First, as noted above, SRP assigned costs to the solar customer sub-classes based on the loads of high-use, non-solar customers. That practice is neither "consistent" nor "systemwide" because SRP does not assign costs to any other class or subclass based on a proxy of high-use customers from another sub-class.

Second, the higher fixed charges imposed on solar customers are based on a different policy than the fixed charges for non-solar customers. According to SRP's 2019 rate proceeding documents, the fixed charges for solar customers collect the following costs:[52]

| Monthly Service Charge | Amp Service 0-200 | Amp Service 200+ |
|---|---|---|
| Billing and Customer Service | $17.60 | $17.60 |
| Meter | $2.04 | $2.04 |
| Distribution Facilities | $12.80 | $25.80 |
| **Total** | **$32.44** | **$45.44** |

In contrast, the fixed charges for non-solar customers collect the following costs:[53]

---

[52] Proposed Adjustments to SRP's Standard Electric Price– Plans Effective with the May 2019 Billing Cycle App. A at 46, included in this filing as Exhibit 16.

[53] Exhibit 17, Proposed Adjustments to SRP's Standard Electric Price Plans Effective with the May 2019 Billing Cycle App. A at 40; *See also* SRP Management Response to David Bender's First Request for Information, Request #3, included in this filing as Exhibit 17, and Revenues for Proposed Price Plans_DB1-Excel.xls, tab "E-13" rows 5-8, "E23" rows 4-7, included in this filing as Exhibit 18.

**Monthly Service Charge**

| Billing and Customer Service | $17.60 |
|---|---|
| Meter | $2.04 |
| Distribution Facilities | $0.36 |
| **Total** | **$20.00** |

As the tables make clear, the difference between the solar and non-solar rates is the amount of Distribution Facilities costs—the "fixed costs associated with local distribution facilities, including feeders downstream of the first piece of equipment, line transformers, secondary transformers, and service laterals"—collected in the fixed charge. SRP admits that the difference is a policy choice, not a difference in Distribution Facility costs.[54] In fact, if anything, solar customers have a lower Distribution Facility cost than the E-26 customers SRP assumed to reflect the customers prior to installing solar.[55] The policy choice to collect a greater percentage of costs through a fixed charge constitutes a different costing principle than SRP applies to non-solar customers.

SRP argues that applying a different policy to solar customers is justified because solar customers "reduce their kWh purchases from SRP due to on-site generation" so "their grid costs are not sufficiently recovered through the per-kWh

---

[54] Exhibit 12, 1/28/19 Interview Tr. at 189–195, 202-03, 269–270; Exhibit 9, Sussex Report at 57–58.

[55] Exhibit 14, 2019 Cost Allocation Study, Schedule 5e, at 25 (allocated Distribution Facilities costs for the 5,647 E-27 solar customers of $510,466, reflecting a per-customer annual cost of $90.40, compared to $11,681,069 for the 126,466 E-26 customers ($92.37 per customer)).

charge."[56] That argument begs the questions: what level of grid cost recovery is

"sufficient" and whether the same policy is applied to non-solar customers with

similar levels of consumption. The Commission's rules prohibit SRP from applying

different policies ("costing principles") to qualifying facilities than are applied to

other customers, regardless of whether the state regulatory authority or

nonregulated utility deems them justified. Reduced contribution to "grid costs"

collected through volumetric charges is not unique to solar customers because non-

solar customers with below-average volumetric consumption also reduce their

contributions to grid costs. In fact, more than 30,000 non-solar customers on SRP's

standard E-23 two-part residential rate using less than 400 kWh per month,[57]

which is less than the average use by solar customers. Those non-solar customers

contribute less to grid costs than solar customers, but are not subject to the same

higher monthly fixed charges as solar customers.[58]

    SRP also occasionally argues[59] that solar customers impose a slightly higher

level of fixed costs of service on the utility than non-solar customers because SRP

requires solar customers to install a production meter between the customer's solar

---

[56] Preliminary Draft of Proposed Adjustments to SRP's Standard Electric Price Plans Effective with the April 2015 Billing Cycle at 27 (Dec. 12, 2014), Exhibit 19.

[57] Calculated by using 6.6% (Stratum 1) * 466,799 = 30,808; Exhibit 1, Proposed Adjustments to SRP's Standard Electric Price Plans Effective with the May 2019 Billing Cycle at 48, 51.

[58] Exhibit 9, Sussex Report at 53 ("Under this approach, fixed charges are increased for DG customers only."); Exhibit 12, 1/28/19 Interview Tr. at 194–195.

[59] The requirement for a production meter did not exist when SRP created the solar-specific rates, so could not constitute a justification for them. Exhibit 13, 1/28/19 Interview Tr. at 247, 252–53.

equipment and the customer's load to measure the customer's gross solar production.[60] However, a second meter is not necessary to provide service to solar customers.[61] Electricity provided to the solar customer and electricity received from the customer is recorded in the primary revenue meter, not the second meter that only measures the solar customer's gross production. Few other utilities require that solar customers install a utility owned production meter because such meters are not necessary to provide service to solar customers. Those that do require a second meter acknowledge that it is primarily for utility information gathering purposes and recognize it as a utility cost to be recovered from all customers, not a cost of providing service to solar customers imposed directly on the solar customers.[62]

SRP's higher solar customer fixed charges are based on applying a different "costing principle" to collect a higher portion of "Distribution Facilities" costs through a fixed, rather than volumetric, charge for solar customers than for non-solar customers.

---

[60] *Id.* at 212.

[61] It is "unreasonable and discriminatory" to impose the cost of a meter that is not required to provide service to qualifying facility, but is, instead, a "research expense" used for utility information gathering, on the qualifying facility. Iowa. Util. Bd., *Swecker v. Midland Power Co-op.*, 2000 WL 477524, Proposed Decision and Order, Analysis § D ( Mar. 28, 2000), affirmed in Iowa Util. Bd., *Swecker v. Midland Power Co-op.*, 2000 WL 1471588 (Aug. 25, 2000).

[62] *See* Ariz. Corp. Comm'n, *In re Application of Tucson Elec. Power Co.*, Docket Nos. E-01933A-15-0239 and E-01933A-15-0322, Decision No. 75975 at 155 (Feb. 24, 2017) (solar customers are not responsible for the cost of an additional production meter that is not required for service to solar customers and benefits the utility), https://docket.images.azcc.gov/0000177572.pdf?i=1668164064353.

### c. The Mandatory Rates for Solar Customers Do Not Apply to SRP's Residential Customers with Similar Load or Other Cost-Related Characteristics.

The E-13, E-14, E-15, and E-27 tariffs for solar customers also fail the third requirement for different qualifying facility rates because they do not apply equally to non-solar customers with similar loads and characteristics.[63] As noted above, solar customers have average consumption lower than the average of all non-solar customer, but within the diverse range of consumption by non-solar customers. In fact, solar customer consumption is, on average, greater than over 30,000 non-solar customers' consumption. Because solar customers must pay a higher fixed charge each month in addition to volumetric charges equal to those paid by non-solar customers, solar customers will always pay more per month than non-solar customers with identical loads. That fails the requirement that a charge imposed on qualifying facilities "apply to the utility's other customers with similar load or other cost-related characteristics."[64]

---

[63] 18 C.F.R. § 292.305(a)(2); *Bankston*, 175 FERC ¶ 61,181 Concurring Opinion at P 3 (an allegation that solar customers "have lower volumetric usage but comparable peak usage" discriminates when customers without generation "reduce volumetric consumption through other means") (2021); *see also* Minn. Pub. Util. Comm'n, *In re Proposed Adoption of Rules of the Minn. Pub. Util. Comm'n Governing Cogeneration and Small Power Production*, No. E-999, 1983 WL 908113 at *64 (Mar. 7, 1983) (noting that imposing a higher fixed charge to recoup fixed costs from self-generating customers without assessing the same fixed charge on nongenerating customers discriminates).

[64] 18 C.F.R. § 292.305(a)(2); *Bankston*, 175 FERC ¶ 61,181, Glick and Clements, concurring (quoting 18 C.F.R. § 292.305(a)(2)).

21

2.    **Denying Solar Customers Access to the EZ-3 Rate Discriminates.**

SRP's solar customer tariffs also discriminate by denying solar customers access to the EZ-3 rate available to non-solar customers.[65] SRP touts the EZ-3 rate as easier and more beneficial to customers than its other time-of-use rate designs.[66] As noted above, the EZ-3 rate design has a more customer-friendly, year-round, 3-hour on-peak period of either 3–6 p.m. or 4–7 p.m. That window also coincides with solar production hours. But SRP denies the benefits of EZ-3 to solar customers, who are prohibited from taking service under EZ-3. The only time-of-use rate designs available for solar customers—E-14 and E-27—utilize longer, seasonally different, on-peak periods. During May–October, the on-peak period is six-hours long, requiring longer-duration load reductions to produce similar bill reductions as customers on the EZ-3 rate design. During November–April, there are two on-peak period for solar customers: 5–9 a.m. and 5–9 p.m., requiring not only a longer load-reduction period than the EZ-3 tariff, but load reductions twice per day. Moreover, because the E-14 and E-27 on-peak periods are less correlated to periods of solar production, solar customers are less able to offset their on-peak use with solar generation than customers who achieve similar reduction in SRP-provided electricity on the EZ-3 tariff.

Petitioner Helms took service under the EZ-3 tariff prior to installing solar. However, because SRP refuses to allow the Helms family to take service under the

---

[65] 18 C.F.R. § 292.305(a)(1)(ii).

[66] Exhibit 1, Proposed Adjustments to SRP's Standard Electric Price Plans Effective with the May 2019 Billing Cycle at 41.

EZ-3 tariff, they are forced to take service under a less favorable rate design than non-solar customers who can access EZ-3.

Denying solar customers access to the EZ-3 tariff that SRP touts as easier and more beneficial to customers, and which would save petitioners on their utility bills compared to the rates available to them, "discriminate[s] against any qualifying facility in comparison to rates for sales to other customers" in violation of 18 C.F.R. § 292.305(a)(1)(ii).

###    3.    The $0.0281/kWh buy-back rate in E-13, E-14 and E-15 is less than SPR's full avoided costs.

SRP's solar customer rates also violate PURPA by forcing solar customers to choose between tariff E-27's difficult-to-manage demand charge and E-13, E-14, and E-15's price for purchase of customer-generated electricity that is lower than SRP's full avoided costs. E-13, E-14, and E-15 are inflow/outflow tariffs that charge the solar customer a retail rate for all SRP-delivered electricity (along with a higher monthly fixed charge) and provide a credit for customer-generated electricity provided to SRP of only $0.0281/kWh, which is below SRP's marginal costs of electricity. That forces solar customers into a Catch-22: either accept a three-part rate that is uncommon and difficult to manage for most residential customers or accept a credit for customer-generated electricity lower than the utility's avoided cost. PURPA prohibits forcing qualifying facilities into that choice.

The $0.0281/kWh credit in E-13, E-14 and E-15 is based on a bid SRP received for a 100 MW utility-scale tracking solar facility.[67] SRP's purported rationale is that a utility-scale solar PPA bid reflects "an actual comparable product in the market" to the electricity provided by residential solar customers.[68] But that argument fails for two reasons: (1) PURPA requires SRP to buy qualifying facilities at the utility's *system-wide marginal cost*, not and advantageous bid that reflects a low-cost resource in the utility's generation portfolio; and (2) wholesale energy delivered to the outer boundaries of the utility's grid that must be stepped down and delivered through the utility's entire distribution system is not an equivalent product to electricity delivered directly to the secondary distribution system immediately adjacent to load. SRP's failure to price solar customer generated electricity at SRP's full avoided costs violates the Commission's rules.[69]

### a. SRP's System-Wide Marginal Cost of Energy is Higher Than $0.0281/kWh.

SRP's $0.0281/kWh price for electricity provided by solar customers is not the "incremental costs to [SRP] of electric energy or capacity or both which, but for the purchase from the qualifying facility … [SRP] would generate itself or purchase

---

[67] Exhibit 12, 1/28/19 Interview Tr. at 225–226.

[68] *Id.* at 230.

[69] 18 C.F.R. 292.304(b)(2); *see also So. Cal. Edison*, 70 FERC ¶ 61,215 at PP 61,677–78 (the Commission reviews a state or nonregulated utility's process to calculate avoided costs and incorrect methods of calculation are subject to enforcement pursuant to 210(h); Policy Statement Regarding the Commission's Enforcement Role Under Section 210 of the Pub. Util. Reg. Policies Act of 1978, 23 FERC ¶ 61,304 at P 61,644 (authority to enforce section 210(f) "extends to situations where…[an nonregulated electric utility provides] a purchase rate standard contrary to existing Commission regulations").

from another source."[70] Three different data sets demonstrate that SRP's marginal cost for energy, alone, is higher than $0.0281/kWh: (1) SRP's marginal cost of service study, (2) SRP's internal generation costs, and (3) market prices at the Palo Verde hub that SRP uses as its market price reference to set avoided costs for large qualifying facilities.

        i.     SRP's Marginal Cost of Service Study reflects a marginal cost higher than $0.0281/kWh.

SRP conducted a marginal cost of service study that defines "[m]arginal energy cost" as "the cost of producing the next kilowatt-hour, or the cost avoided by not producing a kilowatt-hour, including fuel, O&M, and associated marginal related loadings."[71] That is essentially the same definition as full avoided energy costs in 18 C.F.R. § 292.101(6). In 2016, SRP calculated marginal energy costs ranging from $0.039/kWh during winter off-peak to $0.0633/kWh during summer peak.[72] Those calculations also indicate a marginal running cost to produce energy ranging from $63.77/MWh for summer on-peak to $36.08/MWh for summer off-peak, based on SPR's six-year production cost model for 2014–2019, including the impact from day-ahead market energy transactions.[73] SRP's updated Cost

---

[70] 18 C.F.R. § 292.101(6).

[71] Exhibit 15, Dec. 2014 URA at 29; *see also* Exhibit 1, Proposed Adjustments to SRP's Standard Electric Price Plans Effective with the May 2019 Billing Cycle at 26 (describing the Marginal Cost Study as identifying "the marginal cost associated with serving … the incremental unit of a kWh").

[72] Exhibit 15, Dec. 2014 URA at Sched. B page 30.

[73] *See* MCS_2012_Schedules_without LOLP_redacted-Excel.xls, "Sch 1 E21" tab, row 9 included in this filing as Exhibit 20; FY2012 Marginal Cost Study at vi, included in this filing as Exhibit 21.

Allocation Study for Fiscal Year 2020 also indicates marginal energy costs ranging from $0.0485 during summer peak to $0.0272 during winter off-peak.[74] While the low end of that range is just below the $0.0281/kWh credit for solar customer generation, the top of the range is significantly higher and the average during solar production hours is also higher.

ii.     SRP's internal generation costs are greater than $0.0281/kWh.

Another reference point demonstrating that $0.0281/kWh is lower than SRP's marginal energy price is the running cost of SRP's marginal dispatchable resources. During hours that SRP is self-generating its marginal energy supply and not transacting with the market, the running cost of its highest-cost dispatchable generation reflects SRP's avoided energy costs. In other hours, where SRP is also transacting with third-party generators or the wholesale trading market, the marginal energy costs may be even higher—reflecting the energy at the margin across both the market and SRP's internal generation. SRP's own records confirm that the utility's *average* cost for SRP's utility-owned resources and market purchases exceed the $0.0281/kwh it credits residential solar customers. As part of the 2019 rate process, the SRP identified the following costs for its electricity supply:[75]

---

[74] Exhibit 15, 2019 Cost Allocation Study at 28; *See* MCS FY20 Data_DB1, at 7–10, included in this filing as Exhibit 22.

[75] Slide from SRP Special Board Meeting, Proposed Adjustments to SRP's Standard Electric Price Plans Effective with the May 2019 Billing Cycle (Mar. 25, 2019), included in this filing as Exhibit 23.



While these reflect the all-in cost, they are also averages rather marginal costs. The fact that the all-in cost of each of these supply costs far exceed $0.0281/kWh ($28.10/MWh) further confirms that SRP's price for solar customer generated electricity is lower than the utility's full avoided cost.

          iii.    SRP's avoided cost rate for large qualifying facilities is higher than $0.0281/kWh.

The $0.0281/kWh price SRP pays for electricity from solar customers is also lower than SRP's "buyback rate" for electricity generated by SRP's large self-generating customers.[76] SRP calculates a large customer "buyback rate" from the market clearing price for energy at the Palo Verde hub.[77] During the period 2013–2019 (the period for which SRP provided data), those prices were higher than 2.81 cents/kWh. During the entire 3-year period, the average price was $29.76/MWh ($0.0298/kWh) and during the last 12 months of SRP-provided data (February 27,

---

[76] Exhibit 13, 1/28/19 Interview Tr. at 231-4; Exhibit 17, Proposed Adjustments to SRP's Standard Electric Price Plans Effective with the May 2019 Billing Cycle, App. A at 153–54.

[77] Exhibit 13, 1/28/19 Interview Tr. at 231-4.

2018–February 27, 2019) the average price was $38.22/MWh ($0.03822/kWh). Updated clearing price data for the Palo Verde hub from October 2021 to September 2022 indicate that marginal energy costs measured by the hub price SPR uses to set the large customer buy-back rate are even higher.[78] For example, the following figure shows the difference between the 0.0281/kWh price SRP pays solar customers and the market energy price at the Palo Verde node.[79]



Each of these data sources—SRP's marginal cost of service study, SRP's internal all-in supply costs, and the Palo Verde trading hub that SRP uses to set the purchase price for large qualifying facilities—illustrates that SRP's full avoided *energy* costs, alone, are higher than $0.0281/kWh. Including other avoided costs to the avoided energy value would increase that differential between SRP's price for solar customer generated electricity and SRP's full avoided cost. SRP's price for

---

[78] Palo Verde Hourly Prices Oct 2021 – Sept 2022. An excel of this data is included in this filing as Exhibit 24.

[79] *Id.*

solar customer electricity violates the requirement to price qualifying facility generation at SRP's full avoided costs.

### b. The $0.0281/kWh price also omits other avoided cost components.

Avoided costs are not limited to marginal energy supply at a distant generator's interconnection. The Commission's rules require avoided cost calculations to also account for all of a utility's avoided costs, including generation, transmission and distribution capacity costs from the "aggregate value" of all solar customers' generation.[80] As the Commission said in Order 69, the avoided cost requirement:

> refers to the aggregate capability of capacity from qualifying facilities to displace planned utility capacity. In some instances, the small amounts of capacity provided from qualifying facilities taken individually might not enable a purchasing utility to defer or avoid scheduled capacity additions. The aggregate capability of such purchases may, however, be sufficient to permit the deferral or avoidance of a capacity addition. Moreover, while an individual qualifying facility may not provide the equivalent of firm power to the electric utility, the diversity of these facilities may collectively comprise the equivalent of capacity.[81]

Because solar customers deliver electricity directly to the secondary distribution system, their generation bypasses all of the generation, transmission and distribution infrastructure needed to deliver power from distant power plants to customers and thereby reduces generation, transmission, and primary

---

[80] 18 C.F.R. § 292.304(e); 45 Fed. Reg. at 12,216 n.6 (referring to deferred transmission and generation capacity).

[81] 45 Fed. Reg. at 12,227.

distribution capacity needs.[82] SRP's marginal cost study identifies the marginal costs of production, transmission, and distribution capacity. SRP's FY 2012 marginal cost study identifies a marginal cost of generating capacity of $113/kW-year including a 12% reserve margin.[83] It also indicates a marginal cost of transmission of $497.52/kW and a marginal cost of distribution substation capacity of $62.44/kW.[84] To the extent aggregate solar customer generation occurs during the periods of peak loading on each of those systems, it avoids marginal capacity costs for the system. Adding each of the costs avoided by solar customer generation to SRP's marginal energy cost produces SRP's aggregate full avoided cost.

     **c. SRP's $0.0281/kWh credit rate is also not consistent with the optional avoided cost methodologies in Order 872.**

     SRP adopted the $0.0281/kWh credit value for tariffs E-13, E-14 and E-15 before the Commission's Order 872 amending its rules for calculating avoided costs.[85] However, even if Order 872's changes had been in effect, SRP's methodology for calculating the $0.0281/kWh price does not comport with any of Order 872's optional methods of calculating avoided costs. Notably, Order 872 did not "chang[e] the determination in the PURPA Regulations that QF rates must equal a

---

[82] 18 C.F.R. § 292.304(e)(2)(ii)(F) (requiring the regulatory authority or nonregulated utility to take into account the individual and aggregate value of energy and capacity from all qualifying facilities on the utility's system).

[83] *See* Exhibit 20, MCS_2012_Schedules without LOLP_redacted-Excel, "Sch 6" tab, row 44.

[84] *See id.* at, "Sch 2" tab, row 31 and "Sch 4" tab, row 30.

[85] 18 C.F.R. § 292.304(e)(1) (providing state regulatory authorities and nonregulated utilities the ability to use locational marginal prices, "Competitive Price," or "Competitive Solicitation Price" as the avoided energy price).

purchasing utility's full avoided costs."[86] To use any of Order 872's alternative calculation methods, SRP must demonstrate that the chosen calculation method actually reflects the utility's full avoided cost.[87]  SRP could not make the requisite showing under any of Order 872's optional methods.

> i.    $0.0281/kWh is not based on a "Market Hub Price" or a Combined Cycle Price

The $0.0281/kWh price was not derived from a "Market Hub Price" because it was not determined pursuant to 18 C.F.R. § 292.304(b)(7)(i).[88] Instead, it was based on a bid received for a 100 MW utility-scale solar generating facility, which does not reflect "a price established at a liquid market hub" that SRP "has reasonable access" and that "represents an appropriate measure of the electric utility's avoided costs for as-available energy."[89] As noted above, the market hub that SRP transacts for short-run energy sales and purchases is the Palo Verde hub.[90] Even assuming, for the sake of argument, that SRP could meet the predicate showing under 18 C.F.R. §

---

[86] Order 872 ¶ 29, 85 Fed. Reg. 54,638, 54,644 (Sept. 1, 2020); *see also id.* at ¶ 78, 85 Fed. Reg. at 53,650 ("The PURPA Regulations… continue to require that QF rates be set at full avoided costs…"), ¶ 83 ("We are retaining in this final rule the requirement that QF rates be set at a purchasing utility's full avoided cost.").

[87] Order 872 ¶ 59, 85 Fed. Reg. at 54,649 (use of a liquid market hub or a formula require "that the states first determine that such prices represent the purchasing electric utilities' avoided costs"); Order 872-A ¶¶ 14, 85 Fed.Reg. 86,656, 86,660 (Dec. 30, 2020) (for utilities operating outside organized markets with LMPs, use of "competitive prices from liquid market hubs or calculated from a formula… provided the states first determine that such prices represent the purchasing electric utilities' energy avoided costs."). Even for the Locational Marginal Price ("LMP") rebuttable presumption, if it were applicable to SRP, would require SRP to show that the LMP reflects the utility's avoided cost after Petitioners raised the issue. Order 872 ¶¶ 152, 159, 85 Fed. Reg. at 54,659–60.

[88] 18 C.F.R. § 292.101(b)(14).

[89] *Id.* § 292.304(b)(7)(i).

[90] Exhibit 13, 1/28/19 Interview Transcript at 232.

292.304(b)(7)(i)(A)-(D) that the Palo Verde hub is a liquid market hub, that SRP has reasonable access, and that Palo Verde is an appropriate measure of SRP's avoided costs of energy[91], the prices as Palo Verde exceed $0.0281/kWh. SRP provided Palo Verde price data for the period 2013-2019 indicating an average price of $29.76/MWh ($0.0298/kWh) over three years and $38.22/MWh during the last 12 months of that period.[92] As discussed above, recent pricing from the last year indicates that updated Palo Verde prices are even higher.

The $0.0281/kWh price also does not reflect a "Combined Cycle Price" pursuant to 18 C.F.R. § 292.304(b)(7)(ii). It is not determined based on published natural gas price indices, proxy heat rate, and variable operations and maintenance costs for an efficient natural gas combined-cycle generating facility. Nor did SRP make the required findings in 18 C.F.R. § 292.304(b)(7)(ii)(A)-(D).

> ii.    $0.0281/kWh is not a "Competitive Solicitation Price"

Order 872 allows states and unregulated utilities to calculate an avoided cost rate through "a competitive solicitation process,"[93] but only if "such competitive solicitation process is conducted pursuant to procedures ensuring the solicitation is

---

[91] Order 872 ¶ 189 ("before relying on prices from liquid market hubs, a state must find that the liquid market hub price in question represents the purchasing utility's avoided cost for as-available energy."), ¶ 190 (identifying factors for making determination), 85 Fed. Reg. at 54,664; *Id.* at ¶ 194, 85 Fed. Reg. at 54,665 (Commission intends to impose an prerequisite obligation on states (and nonregulated utilities) to make a finding that a liquid hub market prices represent a utility's avoided costs).

[92] *See* "SRP Management Responses to David Bender's First Request for Information" (Mar. 1, 2019), SPR states that the hourly "buy-back rates" discussed in the transcripts in a file titled "3 Yr Hourly Buyback_DB1," included as Exhibit 25.

[93] 18 C.F.R. § 292.304(b)(8)(i).

conducted in a transparent and non-discriminatory manner, including but not limited to" each of the criteria in 18 C.F.R. § 292.304(b)(8)(i)(A)-(E). SPR's process that produced the $0.0281/kWh solar customer credit value did not meet any of those criteria. The bidding process was opaque rather than "open and transparent."[94] There is no indication that SRP provided "substantial and meaningful information regarding transmission constraints, levels of congestion, and interconnections" as part of that process.[95] Nor was the bidding "open to all sources."[96] Instead, according to publicly-available information, SRP limited bidders to those providing at least 50 MW of peak summer demand[97] and limited demand response bids to 100 MW.[98] SRP also does not conduct such solicitations "at regular intervals."[99] Instead, it was conducted once, as part of a narrow program to dedicate specific generation to a select group of "SRP's largest commercial and industrial customers" at beneficial pricing.[100] Lastly, it does not appear that SRP's solicitation process was overseen by an independent administrator[101] or that SRP certified the process as meeting the foregoing criteria.[102] For all of these reasons, the

---

[94] *Id.* § 292.304(b)(8)(i)(A).

[95] *Id.*

[96] *Id.* § 292.304(b)(8)(i)(B).

[97] Exhibit 1, Proposed Adjustments to SRP's Standard Electric Price Plans Effective with the May 2019 Billing Cycle at 7.

[98] *Id.*

[99] 18 C.F.R. § 292.304(b)(8)(i)(C).

[100] Exhibit 1, Proposed Adjustments to SRP's Standard Electric Price Plans Effective with the May 2019 Billing Cycle at 11.

[101] 18 C.F.R. § 292.304(b)(8)(i)(D).

[102] *Id.* § 292.304(b)(8)(i)(E).

$0.0281/kWh SRP pays for solar customers for electricity is not a "Competitive Solicitation Price" under Order 872.

## VII.   Conclusion

For the foregoing reasons, Karen Schedler, Jeremy Helms, Solar United Neighbors and Vote Solar respectfully request that the Commission grant this petition and initiate an enforcement action against the SRP, to compel implementation of 18 C.F.R. § 292.305, which is violated by the unlawful SRP discriminatory solar rates and insufficient buy-back credit.

Respectfully submitted,

*/s/ David Bender*
David Bender
Earthjustice
3916 Nakoma Road
Madison, WI 53711
Phone: (202) 745-5228
Email: dbender@earthjustice.org

*/s/ Hema Lochan*
Hema Lochan
Earthjustice
48 Wall Street, 15th Floor
New York, NY 10005
Phone: (347)-282-6493
Email: hlochan@earthjustice.org

*Counsel for Karen Schedler,
Jeremy Helms, Solar United
Neighbors and Vote Solar*

Dated: January 22, 2024

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on the Salt River Project

via certified mail return-receipt requested to the address indicated below:

> Salt River Project Agricultural Improvement and Power District
> 1500 N. Mill Avenue
> Tempe, AZ 85281

> */s/ David Bender*
> David Bender
> Earthjustice
> 3916 Nakoma Road
> Madison, WI 53711
> Phone: (202) 745-5228
> Email: dbender@earthjustice.org

> Dated: January 22, 2024

# EXHIBIT B

186 FERC ¶ 61,206
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Karen Schedler, Jeremy Helms, Solar United Neighbors,        Docket No. EL24-54-000
and Vote Solar

                        v.

Salt River Project Agricultural Improvement and Power
District

NOTICE OF INTENT NOT TO ACT

(March 21, 2024)

1.      On January 12, 2024, as amended on January 22, 2024, Karen Schedler, Jeremy
Helms, Solar United Neighbors, and Vote Solar (collectively, Petitioners) filed a petition
for enforcement against the Salt River Project Agricultural Improvement and Power
District (SRP) pursuant to section 210(h)(2)(B) of the Public Utility Regulatory Policies
Act of 1978 (PURPA).[1]  Petitioners allege that certain SRP tariffs discriminate against
solar qualifying facilities (QF) with regard to fixed charges, and reimburse solar customer
QFs at less than full avoided cost.

2.      Notice is hereby given that the Commission declines to initiate an enforcement
action pursuant to section 210(h)(2)(A) of PURPA.[2]  Our decision not to initiate an
enforcement action means that Petitioners may themselves bring an enforcement action
against SRP in the appropriate court.[3]

By direction of the Commission.  Commissioner Clements is concurring with a separate
                                 statement attached.
                                 Commissioner Christie is concurring with a separate
                                 statement attached.

( S E A L )

                                        Debbie-Anne A. Reese,
                                         Acting Secretary.

---

[1] 16 U.S.C. § 824a-3(h)(2)(B).

[2] 16 U.S.C. § 824a-3(h)(2)(A).

[3] 16 U.S.C. § 824a-3(h)(2)(B).

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Karen Schedler,                                          Docket No.  EL24-54-000
Jeremy Helms,
Solar United Neighbors,
Vote Solar

            v.

Salt River Project Agricultural Improvement and Power
District

(Issued March 21, 2024)

CLEMENTS, Commissioner, *concurring*:

1.      I concur with the Commission's determination not to initiate an enforcement
action in this case but write separately in an effort to clarify a portion of the jurisdictional
dispute between the parties.  Petitioners contend that this case is subject to federal court
jurisdiction,[1] whereas protesters contend that the matter belongs in state court.[2]  That
question turns on whether the facility at issue is entitled to the protections under Public
Utility Regulatory Policies Act (PURPA)[3], and whether this is a challenge to the Salt

---

[1] 16 U.S.C. §§ 825(a)-(b) (directing the Commission to provide "such rules as it
determines necessary to encourage [Qualifying Facilities]."

[2] 16 U.S.C. §824(e)-3(f) (directing state commission compliance with PURPA by
implementing the rules adopted by the Commission and a state may take action under
PURPA only to the extent that that action is in accordance with the Commission's rules);
*accord FERC v. Mississippi*, 456 U.S. 742, 751 (1982); *Indep. Energy Producers Assoc.
v. CA Pub. Util. Comm.*, 36 F.3d 848, 856 (9th Cir. 1994); *Cogeneration Coalition of
America, Inc.*, 61 FERC ¶ 61,252 at 61,925-6 (1992); *Final Rule Regarding the
Implementation of Section 210 of the Public Utility Regulatory Policies Act of 1978*,
Order No. 69, FERC Stats. & Regs. ¶ 30,128 at 30,864, *order on reh'g*, Order No. 69-A,
FERC Stats. & Regs. ¶ 30,160 (1980), *aff'd in part & vacated in part on other grounds
sub nom. Am. Elec. Power Serv. Corp. v. FERC*, 675 F.2d 1226 (D.C. Cir. 1982), *rev'd in
part on other grounds sub nom. Am. Paper Inst. v. Am. Elec. Power Serv. Corp.*,
461 U.S. 402 (1983).

[3] 16 U.S.C. § 824a-3.

Docket No. EL24-54-000                                                          - 2 -

River Project Agricultural Improvement and Power District (SRP)'s implementation of PURPA, or whether it is an "as-applied" claim "regarding the application of [SRP's] implementations to [the] individual parties" in this case.[4]

2.      To be clear, however, the mere fact that residential customers with rooftop solar are the entities making a claim does not render this dispute state jurisdictional.  While states and relevant non-jurisdictional entities such as SRP have retail rate authority, PURPA provides for federal jurisdiction over a utility or retail authority's implementation of PURPA's obligation to purchase from and sell to Qualifying Facilities.[5]  Further, it is clear that behind-the-meter rooftop solar arrays owned or leased by residential customers *can* be qualifying facilities.  18 C.F.R. § 292.203 provides the criteria that a facility must meet to be a qualifying facility,[6] and exempts "[a]ny facility with a net power production capacity of 1 MW or less" from the requirement to file a Form No. 556 to be considered a qualifying facility.[7]  Thus PURPA necessarily implicates rates that utilities charge to residential customers, and "bars the utility from charging [a] home or business different rates than it would any other customer or supplier."[8]  And claims concerning such rates are not automatically considered "as applied" challenges.  Rather, as both Petitioners and the National Association of Regulatory Utility Commissioners (NARUC) acknowledge, "[a]n implementation challenge considers whether a state agency or nonregulated utility failed to implement a FERC rule promulgated pursuant to PURPA," whereas

---

[4] *Vote Solar v. City of Farmington*, 2 F.4th 1285, 1286 (10th Cir. 2021).

[5] *See* 18 C.F.R. § 292.303(a) and (b) (setting forth the obligation to purchase and obligation to sell), and 16 U.S.C. § 824a-3(g) and (h); *Vote Solar v. City of Farmington*, 2 F.4th at 1287-88 (providing background on the distinction between "as-implemented" and "as applied" challenges).

[6] 18 C.F.R. § 292.203(a).

[7] *Revisions to Form, Procs., & Criteria for Certification of Qualifying Facility Status for Small Power Prod. or Cogeneration Facility*, Order No. 732, 130 FERC ¶ 61,214, at 15 and 37 (2010) ("In exempting smaller generating facilities from the requirement to file a Form 556 in order to obtain QF status, the Commission is simply reverting, for these 1 MW and below facilities only, back to the policy that existed prior to Order No. 671, where QF status did not depend on such a filing.  At that time, a facility's QF status was dependent only on whether the facility met the technical criteria for QF status.").  Solar facilities that meet the criteria for small power production facilities contained in §292-203 are eligible for QF status, however PURPA does not require solar facilities to be QFs.

[8] *Vote Solar v. City of Farmington*, 2 F.4th at 1287.

"[a]n as-applied claim argues that the state or utility implementation of such rule is unlawful as it applies to or affects individual parties."[9]


        For these reasons, I respectfully concur.


_____


Allison Clements
Commissioner


_____

[9] NARUC Motion to Intervene Out of Time and Motion to Dismiss at 3; Petitioner Answer at 4; *see also Vote Solar v. City of Farmington*, 2 F.4th at 1287-90 (discussing the distinction between each type of challenge).

UNITED STATS OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Karen Schedler,                                              Docket No.  EL24-54-000
Jeremy Helms,
Solar United Neighbors,
Vote Solar

                    v.

Salt River Project Agricultural Improvement and Power
District


(Issued March 21, 2024)


CHRISTIE, Commissioner, *concurring*:


1.      I concur in today's order because I agree this Commission should decline to take
enforcement action.  I write separately to state that I find persuasive the various
arguments raised by the National Association of Regulatory Utility Commissioners
(NARUC), the Public Trade Associations (made up of the American Public Power
Association (APPA), the Large Public Power Council (LPPC), and the National Rural
Electric Cooperative Association (NRECA)) and Salt River Project Agricultural
Improvement and Power District (SRP), to wit, that the issues presented in the underlying
Petition for Enforcement are state issues, which should be addressed at the state level, not
at the federal level.[1]

_____

        [1] *See, e.g.*, NARUC Feb. 20, 2024 Motion to Dismiss at 3 (emphasis in original)
("Petitioners' claims are matters clearly outside FERC's jurisdiction.  Petitioners raise as-
applied challenges to SRP's rates that are subject to exclusive state jurisdiction—not
PURPA implementation challenges.  Petitioners challenge SRP's rate design as applied to
*retail* customers with rooftop solar PV panels located behind-the-meter.  Such challenges
to retail rates are subject to exclusive state jurisdiction.  Moreover, Petitioners have not
established that they are entitled to PURPA rights for their behind-the-meter rooftop solar
panels.  Petitioners take service from SRP as residential customers, and there is no
evidence in the record of this proceeding that they ever asked SRP to purchase from, or
sell power to, them as qualifying facilities [(QF)] under PURPA."); *id*. at 4 ("Both FERC
and federal courts have found that questions concerning rate discrimination and the
calculation of avoided costs under PURPA are as-applied issues subject to state
jurisdiction. . . . The retail rate classifications SRP makes available to residential solar

customers appear to provide for net metering of electricity for participating customers.
Net metering has been an established feature of retail electric rates and state energy
policy across the nation for decades."); *id*. at 5-6; NARUC Mar. 17, 2024 Answer at 3-8
(footnote omitted) ("Petitioners assert that they are qualifying facilities entitled to
PURPA, but PURPA concerns sales of power by small power production facilities to
utilities. If a small power production facility is not selling any electricity to the utility,
PURPA does not apply. Petitioners have not alleged that any such sale takes place here.
Petitioners' residences are connected to SRP's distribution grid, and their roof-top power
production facilities are located behind the distribution meter. The Commission has long
held that the utility does not engage in any purchase of electricity from a generator that is
connected behind the customer's meter so long as the customer is an overall net
consumer of electricity during a billing period."); *id*. at 4-8; Public Trade Associations
Feb. 12, 2024 Protest at 1-2 ("Petitioners present no case that SRP has failed to
implement PURPA section 210, since Petitioners have not offered to sell power to, or
requested to purchase power from, SRP under PURPA. Further, Petitioners have not
demonstrated whether and to what extent they have power to sell to SRP subject to
PURPA's requirements. Nor does Petitioners' claim that SRP's retail rates are
discriminatory under PURPA section 210 warrant Commission action. SRP's sales rates
as to Petitioners are a retail rate matter."); *id*. at 9 (emphasis in original) ("[I]nstead of
offering to sell energy, or requesting to purchase energy, under PURPA section 210, the
Petitioners have chosen to participate in a retail sales program designed to balance SRP's
retail obligations and rate equity among customer classes, while integrating customer-
owned facilities. The program was *not* designed to satisfy PURPA's requirements."); *id*.
at 10-15; SRP Feb. 12, 2024 Motion to Dismiss and Protest at 2-3 (footnotes omitted)
("Both Congress and federal courts have made clear that disputes over whether a state
regulator or a utility providing retail electric service has implemented PURPA
'improperly,' including technical, fact-bound determinations over how to calculate
avoided costs, are subject to exclusive state jurisdiction. Here, Petitioners challenge
SRP's retail rates as applied to residential solar customers, which is outside the
Commission's jurisdiction under PURPA Section 210(h)(2). The Petition is an improper
collateral attack on SRP's 2019 retail rates; Petitioners could have participated in SRP's
2019 price process and challenged those rates in state court under Arizona state law—but
they failed to do so. Finally, PURPA does not apply to Petitioners or to the residential
solar price plans they challenge."); *id*. at 6-7 ("The Petition assumes that PURPA applies
to Petitioners and their challenges. This assumption is erroneous. As Petitioners explain,
they are residential customers who take retail electric service from SRP. They can
choose to take residential service from SRP under four different available price plans,
which variously provide for net metering of, or export revenue for, the solar panels on
their rooftops. SRP's 2019 price process did not establish . . . [QF] rates. The price plans
at issue . . . are not SRP's implementation of FERC's PURPA regulations; they are
residential retail rates. Nor have Petitioners asserted outside of the Petition that they are

Docket No. EL24-54-000                                              - 3 -

        For these reasons, I respectfully concur.


_____
Mark C. Christie
Commissioner

_____
QFs or sought QF services from SRP.").

# EXHIBIT C

# SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT

## E-27

### CUSTOMER GENERATION PRICE PLAN FOR RESIDENTIAL SERVICE

Effective: April 2015 Billing Cycle

**Includes Temporary Reduction to the Environmental Programs Cost Adjustment Factor and the Fuel and Purchased Power Adjustment Mechanism**
**EFFECTIVE JANUARY 2017 - OCTOBER 2017 BILLING CYCLE**

## AVAILABILITY:

The E-27 Price Plan is subject to equipment availability, as determined in SRP's sole discretion.

## APPLICABILITY:

Service under this price plan is limited to residential customers with on-site generation who do not purchase all of their energy requirements from SRP. Participation in this plan is required for all such customers, except for those customers who originally installed the on-site generation at a residence on or before December 8, 2014, or who (i) by such date, either delivered to SRP a fully-executed contract for the installation of the on-site generation or had an SRP Residential Solar Electric Program Application for the on-site generation pending with SRP, and (ii) interconnect the generating facility with SRP's electrical grid by February 26, 2016. If a customer meets this exception, that customer will be exempt from required participation in this plan, for service at the residence where the system was originally installed, until the later of (a) March 31, 2025, or (b) the date that is 20 years after the date on which SRP initially interconnected the generating facility on which the exemption is based to SRP's electrical service grid. The foregoing exemption will run with the property, such that it will apply to the initial customer of record for the residence (meaning the person(s) in whose name(s) the account is held) and any subsequent customer of record for that same residence.

This plan is applicable to a single family house, a single unit in a multiple family house, a single unit in a multiple apartment, a manufactured housing unit, or other residential dwelling, where the on-site generation is installed. Service is supplied through one point of delivery and measured through one meter. Service under this price plan excludes resale, sub-metering and standby uses.

## ACCESSIBILITY:

Equipment used to provide time-of-use service must be physically accessible to SRP personnel without prior notice.

## CHARACTER OF SERVICE:

Sixty hertz alternating current at approximately 120/240 volts, single-phase. SRP, in its sole discretion, may provide three-phase service, at not more than 120/240 volts.

## CONDITIONS:

A. On-peak hours from May 1 through October 31 consist of those hours from 1 p.m. to 8 p.m., Monday through Friday, Mountain Standard Time, excluding the holidays listed in Condition B below. On-peak hours from November 1 through April 30 consist of those hours from 5 a.m. to 9 a.m. and from 5 p.m. to 9 p.m., Monday through Friday, Mountain

Published: December 31, 2016

Standard Time, excluding the holidays listed in Condition B below.  All other hours are off-peak.

B. The following holidays are off-peak: New Year's Day (observed), Memorial Day (observed), Independence Day (observed), Labor Day, Thanksgiving Day and Christmas Day (observed).

C. Metering will be such that kilowatts (kW) and kilowatt-hours (kWh) can be related to time-of-use.

D. A customer assigned to this price plan is required to maintain service under this price plan for the duration of the time the customer uses on-site generation and does not purchase all of their energy requirements from SRP.

E. A customer requiring additional interconnection, metering, or other equipment beyond what is necessary for SRP to provide basic service applicable under this price plan must pay SRP for the costs of such additional equipment.

F. Applicable monthly charges or credits may be converted to daily amounts.  The amounts would be annualized and then converted to daily charges or credits.

G. The kWh delivered to SRP shall be subtracted from the kWh delivered from SRP for each billing cycle.  If the kWh calculation is net positive for the billing cycle, SRP will bill the net kWh to the customer under this price plan.  If the kWh calculation is net negative for the billing cycle, SRP will credit customer for the net kWh at the retail per-kWh price under this price plan.  For the purposes of this calculation, excess generation will be tracked by time-of-use period.

**PRICE PER METER:**

Monthly Service Charge

|  | Amp Service 0-200 | Amp Service 200+ |
| --- | --- | --- |
| Billing, Collections | $2.69 | $2.69 |
| Meter | $2.10 | $2.10 |
| Competitive Customer Service | $11.01 | $11.01 |
| Distribution Facilities | $16.64 | $29.64 |
| Total | $32.44 | $45.44 |

(Continued on next page)

Published:  December 31, 2016

E-27

On-Peak per kW Charges

|  | First | Next | All |
|---|---|---|---|
| **SUMMER** | 3 kW | 7 kW | Add'l kW |
| Distribution Delivery | $2.70 | $4.83 | $9.58 |
| Transmission Delivery | $1.93 | $3.51 | $6.66 |
| Transmission Cost Adjustment | $0.00 | $0.00 | $0.00 |
| Ancillary Services 1-2 | $0.09 | $0.18 | $0.35 |
| System Benefits | $0.09 | $0.18 | $0.34 |
| Environmental Programs Adjustment | $0.55 | $0.98 | $1.86 |
| Competitive Customer Service | $0.00 | $0.00 | $0.00 |
| Energy (Generation) | $2.45 | $4.55 | $8.22 |
| Total | $7.81 | $14.23 | $27.01 |

|  | First | Next | All |
|---|---|---|---|
| **SUMMER PEAK** | 3 kW | 7 kW | Add'l kW |
| Distribution Delivery | $2.79 | $5.05 | $10.40 |
| Transmission Delivery | $2.57 | $4.77 | $9.11 |
| Transmission Cost Adjustment | $0.00 | $0.00 | $0.00 |
| Ancillary Services 1-2 | $0.13 | $0.25 | $0.49 |
| System Benefits | $0.12 | $0.21 | $0.36 |
| Environmental Programs Adjustment | $0.62 | $1.16 | $2.24 |
| Competitive Customer Service | $0.00 | $0.00 | $0.00 |
| Energy (Generation) | $3.10 | $5.90 | $10.67 |
| Total | $9.33 | $17.34 | $33.27 |

|  | First | Next | All |
|---|---|---|---|
| **WINTER** | 3 kW | 7 kW | Add'l kW |
| Distribution Delivery | $0.31 | $0.52 | $0.98 |
| Transmission Delivery | $0.96 | $1.56 | $2.68 |
| Transmission Cost Adjustment | $0.00 | $0.00 | $0.00 |
| Ancillary Services 1-2 | $0.06 | $0.11 | $0.19 |
| System Benefits | $0.08 | $0.15 | $0.21 |
| Environmental Programs Adjustment | $0.64 | $0.97 | $1.64 |
| Competitive Customer Service | $0.00 | $0.00 | $0.00 |
| Energy (Generation) | $1.42 | $2.25 | $3.84 |
| Total | $3.47 | $5.56 | $9.54 |

(Continued on next page)

Published:  December 31, 2016

Per kWh Charges

|                          | On-Peak<br>All kWh | Off-Peak<br>All kWh |
|--------------------------|---------|----------|
| **SUMMER**               |         |          |
| Ancillary Services 3-6   | $0.0022 | $0.0003  |
| Energy (Generation)      | $0.0169 | $0.0073  |
| Fuel and Purchased Power | $0.0291 | $0.0291  |
| Total                    | $0.0482 | $0.0367  |

|                          | On-Peak<br>All kWh | Off-Peak<br>All kWh |
|--------------------------|---------|----------|
| **SUMMER PEAK**          |         |          |
| Ancillary Services 3-6   | $0.0026 | $0.0003  |
| Energy (Generation)      | $0.0312 | $0.0125  |
| Fuel and Purchased Power | $0.0291 | $0.0291  |
| Total                    | $0.0629 | $0.0419  |

|                          | On-Peak<br>All kWh | Off-Peak<br>All kWh |
|--------------------------|---------|----------|
| **WINTER**               |         |          |
| Ancillary Services 3-6   | $0.0012 | $0.0003  |
| Energy (Generation)      | $0.0198 | $0.0167  |
| Fuel and Purchased Power | $0.0216 | $0.0216  |
| Total                    | $0.0426 | $0.0386  |

Summer is defined as the May, June, September and October billing cycles.  Summer Peak is defined as the July and August billing cycles.  Winter is defined as the November through April billing cycles.

**ANCILLARY SERVICES:**
Ancillary services provided include:
1) Scheduling, System Control and Dispatch Service
2) Reactive Supply and Voltage Control from Generation Sources Service
3) Regulation and Frequency Response Service
4) Energy Imbalance Service
5) Operating Reserve – Spinning Reserve Service
6) Operating Reserve – Supplemental Reserve Service

Direct access customers must secure Ancillary Services 3-6 from an alternative energy supplier or from SRP under the terms and conditions outlined in SRP's Open Access Transmission Tariff.

**MINIMUM BILL:**
The Monthly Service Charge.

Published:  December 31, 2016

4

E-27

**DETERMINATION OF DEMAND IN KILOWATTS:**
   The billing demand is the maximum thirty-minute integrated kW demand occurring during the on-peak periods of the billing cycle, as measured by the meter.

**ADJUSTMENTS:**
   A. SRP may increase or decrease the price for Fuel and Purchased Power based on changes in the average cost of fuel and purchased power. The price for Fuel and Purchased Power is calculated for the summer and winter season based on the projected cost of fuel and purchased power, adjusted for the actual over- or under-collection of fuel and purchased power revenues relative to fuel and purchased power expenses from prior periods.

   B. SRP may adjust the Transmission Cost Adjustment Factor to recover transmission related costs or charges incurred by SRP resulting from standardized wholesale market designs, regional transmission organizations or related activities.

   C. SRP may increase or decrease the Environmental Programs Cost Adjustment Factor based on changes in the cost of providing energy efficiency, renewable energy and other environmental programs. The price for Environmental Programs is calculated based on the projected cost of the programs, adjusted for the actual over- or under-collection of the programs relative to expenses from prior periods.

   D. SRP will increase or decrease billings under this price plan in proportion to any taxes, fees, or charges (excluding federal or state income taxes) levied or imposed by any governmental authority and payable by SRP for any services, power, or energy provided under this price plan.

**RULES AND REGULATIONS:**
   A. Service under this price plan and all associated riders shall be in accordance with the terms of SRP's Rules and Regulations, as they may be amended or revised by SRP from time to time. Failure by a customer to comply in all material respects with SRP's Rules and Regulations may result in SRP terminating electric service to the customer.

   B. For direct access customers, service under this price plan is in accordance with the terms of SRP's Direct Access Program, as set forth in the Rules and Regulations, including any amendments.

**SPECIAL RIDERS:**
   A. Limited-income customers may qualify for a discount under the Economy Discount Rider.

   B. Customers with medical life support equipment may qualify for a discount under the Medical Life Support Equipment Discount Rider, if and to the extent that rider is available for participation by such customers.

   C. Customers who wish to support the development of renewable energy may elect to participate in the Renewable Energy Credit Pilot Rider.

Published:  December 31, 2016

E-27

D.  Customers who wish to support the development of solar energy may elect to participate in the Residential Community Solar Pilot Rider, if and to the extent that rider is available for participation by such customers.

E.  Customers may be eligible to participate in SRP's Renewable Energy Service Pilot Rider.

Published:  December 31, 2016

# EXHIBIT D

**SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT**

**E-13**

**CUSTOMER GENERATION TIME-OF-USE EXPORT PRICE PLAN FOR RESIDENTIAL SERVICE**

Effective: May 2019 Billing Cycle
Includes Increase to Fuel & Purchased Power Adjustment
Effective:  November 2021 Billing Cycle

**AVAILABILITY:**

Availability of the E-13 Price Plan is subject to equipment availability, as determined in SRP's sole discretion.

**APPLICABILITY:**

Service under this price plan is limited to residential customers with on-site generation who do not purchase all of their energy requirements from SRP.

Service under this price plan is applicable to a single family house, a single unit in a multiple family house, a single unit in a multiple apartment, a manufactured housing unit, or other residential dwelling, supplied through one point of delivery and measured through one meter. Service under this price plan excludes resale, sub-metering and standby uses.

**ACCESSIBILITY:**

Equipment used to provide time-of-use service must be physically accessible to SRP personnel without prior notice.

**CHARACTER OF SERVICE:**

Sixty hertz alternating current at approximately 120/240 volts, single-phase. SRP, in its sole discretion, may provide three-phase service, at not more than 120/240 volts.

**CONDITIONS:**

A. On-peak hours from May 1 through October 31 consist of those hours from 2 p.m. to 8 p.m., Monday through Friday, Mountain Standard Time, excluding the holidays listed in Condition B below. On-peak hours from November 1 through April 30 consist of those hours from 5 a.m. to 9 a.m. and from 5 p.m. to 9 p.m., Monday through Friday, Mountain Standard Time, excluding the holidays listed in Condition B below. All other hours are off-peak.

B. The following holidays are off-peak: New Year's Day (observed), Memorial Day (observed), Independence Day (observed), Labor Day, Thanksgiving Day and Christmas Day (observed).

C. Metering will be such that kilowatt-hours (kWh) can be related to time-of-use, and kWh delivered to SRP, if any, will be measured on a real-time basis.

E-13

D. A customer may cancel service under this price plan and elect service under another applicable price plan. The customer may not subsequently elect service under this price plan for at least one year after the effective date of cancellation.

E. A customer requiring additional interconnection, metering, or other equipment beyond what is necessary for SRP to provide basic service applicable under this price plan must pay SRP for the costs of such additional equipment.

F. Applicable monthly charges or credits may be converted to daily amounts. The amounts would be annualized and then converted to daily charges or credits.

G. At the end of each billing cycle, SRP will credit the customer, at the applicable Per Exported kWh Credit rate, for the total kWh delivered to SRP during that billing cycle. As with all SRP price plans, this price plan, including the Per Exported kWh Credit rate, is subject to change.

**PRICE PER METER:**

| Monthly Service Charge | Amp Service 0-200 | Amp Service 200+ |
|---|---|---|
| Billing and Customer Service | $17.60 | $17.60 |
| Meter | $2.04 | $2.04 |
| Distribution Facilities | $12.80 | $25.80 |
| **Total** | **$32.44** | **$45.44** |

**Per kWh Charges**

| Summer | On-Peak kWh | Off-Peak kWh |
|---|---|---|
| Distribution Delivery | $0.0733 | $0.0085 |
| Transmission | $0.0330 | $0.0037 |
| Transmission Cost Adjustment | $0.0000 | $0.0000 |
| Ancillary Services 1-2 | $0.0049 | $0.0007 |
| Ancillary Services 3-6 | $0.0034 | $0.0004 |
| System Benefits | $0.0029 | $0.0029 |
| Generation | $0.0659 | $0.0305 |
| Fuel and Purchased Power Adjustment | $0.0289 | $0.0289 |
| **Total** | **$0.2123** | **$0.0756** |

(Continued on next page)

Published:  October 15, 2021

E-13

**Per kWh Charges**

| Summer Peak | On-Peak kWh | Off-Peak kWh |
|---|---|---|
| Distribution Delivery | $0.0877 | $0.0086 |
| Transmission | $0.0395 | $0.0037 |
| Transmission Cost Adjustment | $0.0000 | $0.0000 |
| Ancillary Services 1-2 | $0.0063 | $0.0007 |
| Ancillary Services 3-6 | $0.0040 | $0.0004 |
| System Benefits | $0.0029 | $0.0029 |
| Generation | $0.0745 | $0.0307 |
| Fuel and Purchased Power Adjustment | $0.0289 | $0.0289 |
| **Total** | **$0.2438** | **$0.0759** |

| Winter | On-Peak kWh | Off-Peak kWh |
|---|---|---|
| Distribution Delivery | $0.0127 | $0.0074 |
| Transmission | $0.0112 | $0.0037 |
| Transmission Cost Adjustment | $0.0000 | $0.0000 |
| Ancillary Services 1-2 | $0.0027 | $0.0007 |
| Ancillary Services 3-6 | $0.0016 | $0.0004 |
| System Benefits | $0.0029 | $0.0029 |
| Generation | $0.0399 | $0.0299 |
| Fuel and Purchased Power Adjustment | $0.0288 | $0.0288 |
| **Total** | **$0.0998** | **$0.0738** |

**Per Exported kWh Credit**

| All kWh Delivered to SRP | **$0.0281** |
|---|---|

Summer is defined as the May, June, September and October billing cycles. Summer Peak is defined as the July and August billing cycles. Winter is defined as the November through April billing cycles.

E-13

**ANCILLARY SERVICES:**
Ancillary services provided include:
1) Scheduling, System Control and Dispatch Service
2) Reactive Supply and Voltage Control from Generation Sources Service
3) Regulation and Frequency Response Service
4) Energy Imbalance Service
5) Operating Reserve – Spinning Reserve Service
6) Operating Reserve – Supplemental Reserve Service

**MINIMUM BILL:**
The Monthly Service Charge.

**ADJUSTMENTS:**
A. SRP may increase or decrease the price for Fuel and Purchased Power based on changes in the average cost of fuel and purchased power. The price for Fuel and Purchased Power is calculated for the summer and winter season based on the projected cost of fuel and purchased power, adjusted for the actual over- or under collection of fuel and purchased power revenues relative to fuel and purchased power expenses from prior periods.

B. SRP may adjust the Transmission Cost Adjustment Factor to recover transmission related costs or charges incurred by SRP resulting from standardized wholesale market designs, regional transmission organizations or related activities.

C. SRP will increase or decrease billings under this price plan in proportion to any taxes, fees, or charges (excluding federal or state income taxes) levied or imposed by any governmental authority and payable by SRP for any services, power, or energy provided under this price plan.

**RULES AND REGULATIONS:**
A. Service under this price plan and all associated riders shall be in accordance with the terms of SRP's Rules and Regulations, as they may be amended or revised by SRP from time to time. Failure by a customer to comply in all material respects with SRP's Rules and Regulations may result in SRP terminating electric service to the customer.

B. Direct access for retail electric customers is currently inactive in Arizona. While certain components of SRP's price plans are unbundled, such components would need to be redetermined in the event direct access becomes available.

**SPECIAL RIDERS:**
A. Limited-income customers may qualify for a discount under the Economy Discount Rider.

B. Customers with medical life support equipment may qualify for a discount under the Medical Life Support Equipment Discount Rider, if and to the extent that rider is available for participation by such customers.

E-13

    C. Customers who wish to support the development of renewable energy may elect to participate in the Renewable Energy Credit Pilot Rider.

    D. Customers may be eligible to participate in SRP's Renewable Energy Services Pilot Rider.

    E. Customers may be eligible to participate in SRP's Sustainable Energy Services Pilot Rider.

# EXHIBIT E

**SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT**

**E-15**

**CUSTOMER GENERATION AVERAGE DEMAND PRICE PLAN FOR RESIDENTIAL SERVICE**

Effective: May 2019 Billing Cycle
Includes Increase to Fuel & Purchased Power Adjustment
Effective:  November 2021 Billing Cycle

**AVAILABILITY:**
The E-15 Price Plan is subject to equipment availability, as determined in SRP's sole discretion.

**APPLICABILITY:**
Service under this price plan is limited to residential customers with on-site generation who do not purchase all of their energy requirements from SRP.

This plan is applicable to a single family house, a single unit in a multiple family house, a single unit in a multiple apartment, a manufactured housing unit, or other residential dwelling, where the on-site generation is installed. Service is supplied through one point of delivery and measured through one meter. Service under this price plan excludes resale, sub-metering and standby uses.

**ACCESSIBILITY:**
Equipment used to provide time-of-use service must be physically accessible to SRP personnel without prior notice.

**CHARACTER OF SERVICE:**
Sixty hertz alternating current at approximately 120/240 volts, single-phase. SRP, in its sole discretion, may provide three-phase service, at not more than 120/240 volts.

**CONDITIONS:**
A. On-peak hours from May 1 through October 31 consist of those hours from 2 p.m. to 8 p.m., Monday through Friday, Mountain Standard Time, excluding the holidays listed in Condition B below. On-peak hours from November 1 through April 30 consist of those hours from 5 a.m. to 9 a.m. and from 5 p.m. to 9 p.m., Monday through Friday, Mountain Standard Time, excluding the holidays listed in Condition B below. All other hours are off-peak.

B. The following holidays are off-peak: New Year's Day (observed), Memorial Day (observed), Independence Day (observed), Labor Day, Thanksgiving Day and Christmas Day (observed).

C. Metering will be such that kilowatts (kW) and kilowatt-hours (kWh) can be related to time-of-use.

E-15

D. A customer may cancel service under this price plan and elect service under another applicable price plan. The customer may not subsequently elect service under this price plan for at least one year after the effective date of cancellation.

E. A customer requiring additional interconnection, metering, or other equipment beyond what is necessary for SRP to provide basic service applicable under this price plan must pay SRP for the costs of such additional equipment.

F. Applicable monthly charges or credits may be converted to daily amounts. The amounts would be annualized and then converted to daily charges or credits.

G. The kWh delivered to SRP shall be subtracted from the kWh delivered from SRP for each billing cycle. If the kWh calculation is net positive for the billing cycle, SRP will bill the net kWh to the customer under this price plan. If the kWh calculation is net negative for the billing cycle, SRP will credit customer for the net kWh at the retail per-kWh price under this price plan. For the purposes of this calculation, excess generation will be tracked by time-of-use period.

**PRICE PER METER:**

| Monthly Service Charge | Amp Service 0-200 | Amp Service 200+ | |
|---|---|---|---|
| Billing and Customer Service | $17.60 | $17.60 | |
| Meter | $2.04 | $2.04 | |
| Distribution Facilities | $12.80 | $25.80 | |
| **Total** | **$32.44** | **$45.44** | |

(Continued on next page)

E-15

**Per kW Charges (Average On-Peak Daily kW)**

**Summer** — Average kW

| Summer | Average kW |
|---|---|
| Distribution Delivery | $5.02 |
| Transmission | $2.31 |
| Transmission Cost Adjustment | $0.00 |
| Generation | $11.96 |
| **Total** | **$19.29** |

**Summer Peak** — Average kW

| Summer Peak | Average kW |
|---|---|
| Distribution Delivery | $6.35 |
| Transmission | $3.09 |
| Transmission Cost Adjustment | $0.00 |
| Generation | $12.50 |
| **Total** | **$21.94** |

**Winter** — Average kW

| Winter | Average kW |
|---|---|
| Distribution Delivery | $3.04 |
| Transmission | $1.14 |
| Transmission Cost Adjustment | $0.00 |
| Generation | $3.95 |
| **Total** | **$8.13** |

(Continued on next page)

E-15

**Per kWh Charges**

| Summer | On-Peak kWh | Off-Peak kWh |
|---|---|---|
| Ancillary Services 1-2 | $0.0041 | $0.0010 |
| Ancillary Services 3-6 | $0.0047 | $0.0007 |
| System Benefits | $0.0029 | $0.0029 |
| Generation | $0.0085 | $0.0054 |
| Fuel and Purchased Power Adjustment | $0.0289 | $0.0289 |
| **Total** | **$0.0491** | **$0.0389** |

| Summer Peak | On-Peak kWh | Off-Peak kWh |
|---|---|---|
| Ancillary Services 1-2 | $0.0109 | $0.0010 |
| Ancillary Services 3-6 | $0.0058 | $0.0007 |
| System Benefits | $0.0029 | $0.0029 |
| Generation | $0.0166 | $0.0106 |
| Fuel and Purchased Power Adjustment | $0.0289 | $0.0289 |
| **Total** | **$0.0651** | **$0.0441** |

| Winter | On-Peak kWh | Off-Peak kWh |
|---|---|---|
| Ancillary Services 1-2 | $0.0030 | $0.0010 |
| Ancillary Services 3-6 | $0.0026 | $0.0007 |
| System Benefits | $0.0029 | $0.0029 |
| Generation | $0.0084 | $0.0083 |
| Fuel and Purchased Power Adjustment | $0.0288 | $0.0288 |
| **Total** | **$0.0457** | **$0.0417** |

Summer is defined as the May, June, September and October billing cycles. Summer Peak is defined as the July and August billing cycles. Winter is defined as the November through April billing cycles.

Published:  October 15, 2021

E-15

**ANCILLARY SERVICES:**

Ancillary services provided include:
1) Scheduling, System Control and Dispatch Service
2) Reactive Supply and Voltage Control from Generation Sources Service
3) Regulation and Frequency Response Service
4) Energy Imbalance Service
5) Operating Reserve – Spinning Reserve Service
6) Operating Reserve – Supplemental Reserve Service

**MINIMUM BILL:**

The Monthly Service Charge.

**DETERMINATION OF DEMAND IN KILOWATTS:**

The billing demand, in each billing cycle, is the average of the daily maximum thirty-minute integrated kW demands occurring during the on-peak periods of that billing cycle, as measured by the meter.

**ADJUSTMENTS:**

A. SRP may increase or decrease the price for Fuel and Purchased Power based on changes in the average cost of fuel and purchased power. The price for Fuel and Purchased Power is calculated for the summer and winter season based on the projected cost of fuel and purchased power, adjusted for the actual over- or under-collection of fuel and purchased power revenues relative to fuel and purchased power expenses from prior periods.

B. SRP may adjust the Transmission Cost Adjustment Factor to recover transmission related costs or charges incurred by SRP resulting from standardized wholesale market designs, regional transmission organizations or related activities.

C. SRP will increase or decrease billings under this price plan in proportion to any taxes, fees, or charges (excluding federal or state income taxes) levied or imposed by any governmental authority and payable by SRP for any services, power, or energy provided under this price plan.

**RULES AND REGULATIONS:**

A. Service under this price plan and all associated riders shall be in accordance with the terms of SRP's Rules and Regulations, as they may be amended or revised by SRP from time to time. Failure by a customer to comply in all material respects with SRP's Rules and Regulations may result in SRP terminating electric service to the customer.

B. Direct access for retail electric customers is currently inactive in Arizona. While certain components of SRP's price plans are unbundled, such components would need to be redetermined in the event direct access becomes available.

Published:  October 15, 2021

E-15

**SPECIAL RIDERS:**

A. Limited-income customers may qualify for a discount under the Economy Discount Rider.

B. Customers with medical life support equipment may qualify for a discount under the Medical Life Support Equipment Discount Rider, if and to the extent that rider is available for participation by such customers.

C. Customers who wish to support the development of renewable energy may elect to participate in the Renewable Energy Credit Pilot Rider.

D. Customers may be eligible to participate in SRP's Renewable Energy Service Pilot Rider.

E. Customers may be eligible to participate in SRP's Sustainable Energy Services Pilot Rider.

# EXHIBIT F

**SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT**

**E-14**

**RESIDENTIAL CUSTOMER GENERATION ELECTRIC VEHICLE EXPORT PRICE PLAN**

Effective: May 2019 Billing Cycle
Includes Increase to Fuel & Purchased Power Adjustment
Effective:  November 2021 Billing Cycle

**AVAILABILITY:**

Availability of the E-14 Price Plan is subject to equipment availability, as determined in SRP's sole discretion.

**APPLICABILITY:**

Service under this price plan is limited to residential customers with on-site generation who do not purchase all of their energy requirements from SRP.

Service under this price plan is applicable to a single family house, a single unit in a multiple family house, a single unit in a multiple apartment, a manufactured housing unit, or other residential dwelling, supplied through one point of delivery and measured through one meter. Service under this price plan excludes resale, sub-metering and standby uses.

**ACCESSIBILITY:**

Equipment used to provide time-of-use service must be physically accessible to SRP personnel without prior notice.

**CHARACTER OF SERVICE:**

Sixty hertz alternating current at approximately 120/240 volts, single-phase. SRP, in its sole discretion, may provide three-phase service, at not more than 120/240 volts.

**CONDITIONS:**

A. On-peak hours from May 1 through October 31 consist of those hours from 2 p.m. to 8 p.m., Monday through Friday, Mountain Standard Time, excluding the holidays listed in Condition C below. On-peak hours from November 1 through April 30 consist of those hours from 5 a.m. to 9 a.m. and from 5 p.m. to 9 p.m., Monday through Friday, Mountain Standard Time, excluding the holidays listed in Condition C below.

B. Super off-peak hours year-round consist of those hours from 11 p.m. to 5 a.m., Mountain Standard Time, on weekdays, weekends, and holidays. All hours that are not on-peak or super off-peak are off-peak.

E-14

C. The following holidays are super off-peak when applicable under Condition B above, or off-peak: New Year's Day (observed), Memorial Day (observed), Independence Day (observed), Labor Day, Thanksgiving Day and Christmas Day (observed).

D. Metering will be such that kilowatt-hours (kWh) can be related to time-of-use, and kWh delivered to SRP, if any, will be measured on a real-time basis.

E. A customer may cancel service under this price plan and elect service under another applicable price plan. The customer may not subsequently elect service under this price plan for at least one year after the effective date of cancellation.

F. A customer requiring additional interconnection, metering, or other equipment beyond what is necessary for SRP to provide basic service applicable under this price plan must pay SRP for the costs of such additional equipment.

G. Applicable monthly charges or credits may be converted to daily amounts. The amounts would be annualized and then converted to daily charges or credits.

H. At the end of each billing cycle, SRP will credit the customer, at the applicable Per Exported kWh Credit rate, for the total kWh delivered to SRP during that billing cycle. As with all SRP price plans, this price plan, including the Per Exported kWh Credit rate, is subject to change.

**PRICE PER METER:**

| Monthly Service Charge | Amp Service 0-200 | Amp Service 200+ |
|---|---|---|
| Billing and Customer Service | $17.60 | $17.60 |
| Meter | $2.04 | $2.04 |
| Distribution Facilities | $12.80 | $25.80 |
| **Total** | **$32.44** | **$45.44** |

(Continued on next page)

E-14

**Per kWh Charges**

| Summer | On-Peak kWh | Off-Peak kWh | Super Off-Peak kWh |
|---|---|---|---|
| Distribution Delivery | $0.0733 | $0.0085 | $0.0085 |
| Transmission | $0.0330 | $0.0037 | $0.0037 |
| Transmission Cost Adjustment | $0.0000 | $0.0000 | $0.0000 |
| Ancillary Services 1-2 | $0.0049 | $0.0007 | $0.0007 |
| Ancillary Services 3-6 | $0.0034 | $0.0004 | $0.0004 |
| System Benefits | $0.0029 | $0.0029 | $0.0029 |
| Generation | $0.0659 | $0.0343 | $0.0189 |
| Fuel and Purchased Power Adjustment | $0.0289 | $0.0289 | $0.0289 |
| **Total** | **$0.2123** | **$0.0794** | **$0.0640** |

| Summer Peak | On-Peak kWh | Off-Peak kWh | Super Off-Peak kWh |
|---|---|---|---|
| Distribution Delivery | $0.0877 | $0.0086 | $0.0086 |
| Transmission | $0.0395 | $0.0037 | $0.0037 |
| Transmission Cost Adjustment | $0.0000 | $0.0000 | $0.0000 |
| Ancillary Services 1-2 | $0.0063 | $0.0007 | $0.0007 |
| Ancillary Services 3-6 | $0.0040 | $0.0004 | $0.0004 |
| System Benefits | $0.0029 | $0.0029 | $0.0029 |
| Generation | $0.0745 | $0.0347 | $0.0191 |
| Fuel and Purchased Power Adjustment | $0.0289 | $0.0289 | $0.0289 |
| **Total** | **$0.2438** | **$0.0799** | **$0.0643** |

(Continued on next page)

Published:  October 15, 2021

E-14

**Per kWh Charges**

**Winter**

| | On-Peak kWh | Off-Peak kWh | Super Off-Peak kWh |
|---|---|---|---|
| Distribution Delivery | $0.0127 | $0.0074 | $0.0074 |
| Transmission | $0.0112 | $0.0037 | $0.0037 |
| Transmission Cost Adjustment | $0.0000 | $0.0000 | $0.0000 |
| Ancillary Services 1-2 | $0.0027 | $0.0007 | $0.0007 |
| Ancillary Services 3-6 | $0.0016 | $0.0004 | $0.0004 |
| System Benefits | $0.0029 | $0.0029 | $0.0029 |
| Generation | $0.0399 | $0.0345 | $0.0183 |
| Fuel and Purchased Power Adjustment | $0.0288 | $0.0288 | $0.0288 |
| **Total** | **$0.0998** | **$0.0784** | **$0.0622** |

**Per Exported kWh Credit**

| All kWh Delivered to SRP | **$0.0281** |
|---|---|

Summer is defined as the May, June, September and October billing cycles. Summer Peak is defined as the July and August billing cycles. Winter is defined as the November through April billing cycles.

**ANCILLARY SERVICES:**
Ancillary services provided include:
1) Scheduling, System Control and Dispatch Service
2) Reactive Supply and Voltage Control from Generation Sources Service
3) Regulation and Frequency Response Service
4) Energy Imbalance Service
5) Operating Reserve – Spinning Reserve Service
6) Operating Reserve – Supplemental Reserve Service

**MINIMUM BILL:**
The Monthly Service Charge.

**ADJUSTMENTS:**
A. SRP may increase or decrease the price for Fuel and Purchased Power based on changes in the average cost of fuel and purchased power. The price for Fuel and Purchased Power is calculated for the summer and winter season based on the projected cost of fuel and purchased power, adjusted for the actual over- or under-collection of fuel and purchased power revenues relative to fuel and purchased power expenses from prior periods.

B. SRP may adjust the Transmission Cost Adjustment Factor to recover transmission related costs or charges incurred by SRP resulting from standardized wholesale market designs, regional transmission organizations or related activities.

Published:  October 15, 2021

C. SRP will increase or decrease billings under this price plan in proportion to any taxes, fees, or charges (excluding federal or state income taxes) levied or imposed by any governmental authority and payable by SRP for any services, power, or energy provided under this price plan.

**RULES AND REGULATIONS:**

A. Service under this price plan and all associated riders shall be in accordance with the terms of SRP's Rules and Regulations, as they may be amended or revised by SRP from time to time. Failure by a customer to comply in all material respects with SRP's Rules and Regulations may result in SRP terminating electric service to the customer.

B. Direct access for retail electric customers is currently inactive in Arizona. While certain components of SRP's price plans are unbundled, such components would need to be redetermined in the event direct access becomes available.

**SPECIAL RIDERS:**

A. Limited-income customers may qualify for a discount under the Economy Discount Rider.

B. Customers with medical life support equipment may qualify for a discount under the Medical Life Support Equipment Discount Rider, if and to the extent that rider is available for participation by such customers.

C. Customers who wish to support the development of renewable energy may elect to participate in the Renewable Energy Credit Pilot Rider.

D. Customers may be eligible to participate in SRP's Renewable Energy Services Pilot Rider.

E. Customers may be eligible to participate in SRP's Sustainable Energy Services Pilot Rider.

# EXHIBIT G

**SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT**

**E-27**

**CUSTOMER GENERATION PRICE PLAN FOR RESIDENTIAL SERVICE**

Effective: May 2019 Billing Cycle
Supersedes: April 2015 Billing Cycle
Includes Increase to Fuel & Purchased Power Adjustment
Effective:  November 2021 Billing Cycle

**AVAILABILITY:**

The E-27 Price Plan is subject to equipment availability, as determined in SRP's sole discretion.

**APPLICABILITY:**

Service under this price plan is limited to residential customers with on-site generation who do not purchase all of their energy requirements from SRP. Participation in this plan is required for all such customers, except for those who:

(A) Participate instead in one of the following price plans applicable to residential customers with on-site generation: E-13 Price Plan; E-14 Price Plan; or E-15 Price Plan; or

(B) Originally installed the on-site generation at a residence on or before December 8, 2014, or who (i) by such date, either delivered to SRP a fully-executed contract for the installation of the on-site generation or had an SRP Residential Solar Electric Program Application for the on-site generation pending with SRP, and (ii) interconnected the generating facility with SRP's electrical grid by February 26, 2016. If a customer meets this exception, that customer will be exempt from required participation in this plan, for service at the residence where the system was originally installed, until the later of (a) March 31, 2025, or (b) the date that is 20 years after the date on which SRP initially interconnected the generating facility on which the exemption is based to SRP's electrical service grid. The exemption in this clause (B) will run with the property, such that it will apply to the initial customer of record for the residence (meaning the person(s) in whose name(s) the account is held) and any subsequent customer of record for that same residence.

This plan is applicable to a single family house, a single unit in a multiple family house, a single unit in a multiple apartment, a manufactured housing unit, or other residential dwelling, where the on-site generation is installed. Service is supplied through one point of delivery and measured through one meter. Service under this price plan excludes resale, sub-metering and standby uses.

**ACCESSIBILITY:**

Equipment used to provide time-of-use service must be physically accessible to SRP personnel without prior notice.

**CHARACTER OF SERVICE:**

Sixty hertz alternating current at approximately 120/240 volts, single-phase. SRP, in its sole discretion, may provide three-phase service, at not more than 120/240 volts.

**CONDITIONS:**

A. On-peak hours from May 1 through October 31 consist of those hours from 2 p.m. to 8 p.m., Monday through Friday, Mountain Standard Time, excluding the holidays listed in Condition B below. On-peak hours from November 1 through April 30 consist of those hours from 5 a.m. to 9 a.m. and from 5 p.m. to 9 p.m., Monday through Friday, Mountain Standard Time, excluding the holidays listed in Condition B below. All other hours are off-peak.

B. The following holidays are off-peak: New Year's Day (observed), Memorial Day (observed), Independence Day (observed), Labor Day, Thanksgiving Day and Christmas Day (observed).

C. Metering will be such that kilowatts (kW) and kilowatt-hours (kWh) can be related to time-of-use.

D. A customer assigned to this price plan is required to maintain service under this price plan for the duration of the time the customer uses on-site generation and does not purchase all of their energy requirements from SRP, unless the customer instead takes service under the E-13 Price Plan, E-14 Price Plan, or E-15 Price Plan.

E. A customer requiring additional interconnection, metering, or other equipment beyond what is necessary for SRP to provide basic service applicable under this price plan must pay SRP for the costs of such additional equipment.

F. Applicable monthly charges or credits may be converted to daily amounts. The amounts would be annualized and then converted to daily charges or credits.

G. The kWh delivered to SRP shall be subtracted from the kWh delivered from SRP for each billing cycle. If the kWh calculation is net positive for the billing cycle, SRP will bill the net kWh to the customer under this price plan. If the kWh calculation is net negative for the billing cycle, SRP will credit customer for the net kWh at the retail per-kWh price under this price plan. For the purposes of this calculation, excess generation will be tracked by time-of-use period.

Published:  October 15, 2021

E-27

**PRICE PER METER:**

| Monthly Service Charge | Amp Service 0-200 | Amp Service 200+ |
|---|---|---|
| Billing and Customer Service | $17.60 | $17.60 |
| Meter | $2.04 | $2.04 |
| Distribution Facilities | $12.80 | $25.80 |
| **Total** | **$32.44** | **$45.44** |

**Per kW Charges (On-Peak)**

| Summer | First 3 kW | Next 7 kW | All Add'l kW |
|---|---|---|---|
| Distribution Delivery | $2.88 | $5.07 | $10.29 |
| Transmission | $0.98 | $1.78 | $3.40 |
| Transmission Cost Adjustment | $0.00 | $0.00 | $0.00 |
| Generation | $4.03 | $7.52 | $13.59 |
| **Total** | **$7.89** | **$14.37** | **$27.28** |

| Summer Peak | First 3 kW | Next 7 kW | All Add'l kW |
|---|---|---|---|
| Distribution Delivery | $3.00 | $5.33 | $11.30 |
| Transmission | $1.28 | $2.40 | $4.59 |
| Transmission Cost Adjustment | $0.00 | $0.00 | $0.00 |
| Generation | $5.15 | $9.78 | $17.70 |
| **Total** | **$9.43** | **$17.51** | **$33.59** |

| Winter | First 3 kW | Next 7 kW | All Add'l kW |
|---|---|---|---|
| Distribution Delivery | $0.66 | $1.05 | $1.98 |
| Transmission | $0.48 | $0.78 | $1.20 |
| Transmission Cost Adjustment | $0.00 | $0.00 | $0.00 |
| Generation | $2.35 | $3.75 | $6.39 |
| **Total** | **$3.49** | **$5.58** | **$9.57** |

(Continued on next page)

Published:  October 15, 2021

**Per kWh Charges**

| Summer | On-Peak kWh | Off-Peak kWh |
|---|---|---|
| Ancillary Services 1-2 | $0.0041 | $0.0010 |
| Ancillary Services 3-6 | $0.0047 | $0.0007 |
| System Benefits | $0.0029 | $0.0029 |
| Generation | $0.0085 | $0.0054 |
| Fuel and Purchased Power Adjustment | $0.0289 | $0.0289 |
| **Total** | **$0.0491** | **$0.0389** |

| Summer Peak | On-Peak kWh | Off-Peak kWh |
|---|---|---|
| Ancillary Services 1-2 | $0.0109 | $0.0010 |
| Ancillary Services 3-6 | $0.0058 | $0.0007 |
| System Benefits | $0.0029 | $0.0029 |
| Generation | $0.0166 | $0.0106 |
| Fuel and Purchased Power Adjustment | $0.0289 | $0.0289 |
| **Total** | **$0.0651** | **$0.0441** |

| Winter | On-Peak kWh | Off-Peak kWh |
|---|---|---|
| Ancillary Services 1-2 | $0.0030 | $0.0010 |
| Ancillary Services 3-6 | $0.0026 | $0.0007 |
| System Benefits | $0.0029 | $0.0029 |
| Generation | $0.0084 | $0.0083 |
| Fuel and Purchased Power Adjustment | $0.0288 | $0.0288 |
| **Total** | **$0.0457** | **$0.0417** |

Summer is defined as the May, June, September and October billing cycles. Summer Peak is defined as the July and August billing cycles. Winter is defined as the November through April billing cycles.

Published:  October 15, 2021

**ANCILLARY SERVICES:**

Ancillary services provided include:
1) Scheduling, System Control and Dispatch Service
2) Reactive Supply and Voltage Control from Generation Sources Service
3) Regulation and Frequency Response Service
4) Energy Imbalance Service
5) Operating Reserve – Spinning Reserve Service
6) Operating Reserve – Supplemental Reserve Service

**MINIMUM BILL:**

The Monthly Service Charge.

**DETERMINATION OF DEMAND IN KILOWATTS:**

The billing demand is the maximum thirty-minute integrated kW demand occurring during the on-peak periods of the billing cycle, as measured by the meter.

**ADJUSTMENTS:**

A. SRP may increase or decrease the price for Fuel and Purchased Power based on changes in the average cost of fuel and purchased power. The price for Fuel and Purchased Power is calculated for the summer and winter season based on the projected cost of fuel and purchased power, adjusted for the actual over- or under-collection of fuel and purchased power revenues relative to fuel and purchased power expenses from prior periods.

B. SRP may adjust the Transmission Cost Adjustment Factor to recover transmission related costs or charges incurred by SRP resulting from standardized wholesale market designs, regional transmission organizations or related activities.

C. SRP will increase or decrease billings under this price plan in proportion to any taxes, fees, or charges (excluding federal or state income taxes) levied or imposed by any governmental authority and payable by SRP for any services, power, or energy provided under this price plan.

**RULES AND REGULATIONS:**

A. Service under this price plan and all associated riders shall be in accordance with the terms of SRP's Rules and Regulations, as they may be amended or revised by SRP from time to time. Failure by a customer to comply in all material respects with SRP's Rules and Regulations may result in SRP terminating electric service to the customer.

B. Direct access for retail electric customers is currently inactive in Arizona. While certain components of SRP's price plans are unbundled, such components would need to be redetermined in the event direct access becomes available.

Published:  October 15, 2021

**SPECIAL RIDERS:**

A. Limited-income customers may qualify for a discount under the Economy Discount Rider.

B. Customers with medical life support equipment may qualify for a discount under the Medical Life Support Equipment Discount Rider, if and to the extent that rider is available for participation by such customers.

C. Customers who wish to support the development of renewable energy may elect to participate in the Renewable Energy Credit Pilot Rider.

D. Customers who wish to support the development of solar energy may elect to participate in the Residential Community Solar Pilot Rider, if and to the extent that rider is available for participation by such customers.

E. Customers may be eligible to participate in SRP's Renewable Energy Service Pilot Rider.

F. Customers may be eligible to participate in SRP's Demand Excursion Pilot Rider.

G. Customers may be eligible to participate in SRP's Sustainable Energy Services Pilot Rider.