JENNER & BLOCK LLP
Matthew E. Price (*pro hac vice*)
Suedeen G. Kelly (*pro hac vice*)
1099 New York Avenue, N.W., Suite 900
Washington, DC 20001
Tel: (202) 639-6000
Fax: (202) 639-6066
mprice@jenner.com
skelly@jenner.com

WILMER CUTLER PICKERING
    HALE AND DORR LLP
Christopher E. Babbitt (*pro hac vice*)
Daniel S. Volchok (*pro hac vice*)
2100 Pennsylvania Avenue, N.W.
Washington, DC 20037
Tel: (202) 663-6000
Fax: (202) 663-6363
christopher.babbitt@wilmerhale.com
daniel.volchok@wilmerhale.com

*Attorneys for Defendant Salt River Project*
    *Agricultural Improvement and Power District*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| SOLAR UNITED NEIGHBORS, VOTE SOLAR, KAREN SCHEDLER, and JEREMY HELMS,<br><br>                                    Plaintiffs,<br><br>        vs.<br><br>SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT,<br><br>                                    Defendant. | Case No. 2:24-cv-02021-DJH<br><br>**DEFENDANT'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

MOTION TO DISMISS ....................................................................................................... 1

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ........................................ 1

STATEMENT ....................................................................................................................... 4

    A.    Statutory And Regulatory Background ........................................................... 4

    B.    Factual Background ......................................................................................... 7

ARGUMENT ...................................................................................................................... 10

I.    This Court Lacks Subject-Matter Jurisdiction Over Plaintiffs' Claims Concerning SRP's Rates ............................................................................... 10

II.    Plaintiffs Fail To Plausibly Allege A Violation Of PURPA .................................. 12

    A.    Plaintiffs Fail To State A Plausible Claim That SRP Charges Them A "Discriminatory" Rate For The Electricity They Buy From SRP ......................................................................................................... 13

        1.    Plaintiffs do not adequately allege discriminatory rates ................. 13

        2.    Plaintiffs do not allege that their QFs pay discriminatory rates ....................................................................................................... 16

    B.    Plaintiffs' Allegations About "Difficult To Understand" Charges And Lack Of Access To "Beneficial" Tariffs Cannot Support A PURPA Claim ................................................................................. 18

    C.    Plaintiffs Fail To State A Claim That SRP Purchases Excess Electricity At A Rate Below Its Avoided Costs ........................................... 19

III.    Plaintiffs Request Relief That Is Unavailable Under PURPA .............................. 21

IV.    At A Minimum, The Organizational Plaintiffs Must Be Dismissed ..................... 23

CONCLUSION ................................................................................................................... 24

CERTIFICATE OF CONFERRAL .................................................................................... 25

CERTIFICATE OF SERVICE ........................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Adrian Energy Associates v. Michigan Public Service Commission,*
    481 F.3d 414 (6th Cir. 2007).................................................................. 11

*Allco Renewable Energy Ltd. v. Massachusetts Electric Co.,*
    875 F.3d 64 (1st Cir. 2017) ............................................................ 11, 22

*ASARCO, LLC v. Celanese Chemical Co.*, 792 F.3d 1203
    (9th Cir. 2015)................................................................................... 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................... 16, 19, 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)................. 12, 16, 21

*CAlifornians for Renewable Energy v. California Public
    Utilities Commission*, No. 23-55291, 2024 WL 4511609
    (9th Cir. Oct. 17, 2024) ..................................................................... 23

*Connecticut Department of Public Utility Control v. FERC,*
    569 F.3d 477 (D.C. Cir. 2018) .......................................................... 20

*Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004)......................... 24

*CSX Transportation, Inc. v. Alabama Department of Revenue,*
    562 U.S. 277 (2011) ......................................................................... 14

*Delaware v. Pennsylvania*, 598 U.S. 115 (2023)............................................ 17

*Ellis v. Salt River Project Agricultural Improvement & Power District,*
    No. 19-cv-1228, 2022 WL 3552392 (D. Ariz. Aug. 18, 2022)............... 2–3, 14–15

*Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380 (5th Cir. 2014)........................... 10–11

*FERC v. Mississippi*, 456 U.S. 742 (1982) ..................................................... 1

*Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939
    (9th Cir. 2021)................................................................................... 10

*Greensboro Lumber Co. v. Georgia Power Co.*, 643 F. Supp. 1345
    (N.D. Ga. 1986), *aff'd*, 844 F.2d 1538 (11th Cir. 1988) ........................ 22

*Independent Energy Producers Ass'n v. California Public Utilities
    Commission*, 36 F.3d 848 (9th Cir. 1994) ........................................... 6

*Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2014) ................. 12

*Leong v. Potter*, 347 F.3d 1117 (9th Cir. 2003)......................................... 14

*Liu v. SEC*, 591 U.S. 71 (2020) ...................................................... 23

*Portland General Electric Co. v. FERC*, 854 F.3d 692 (D.C. Cir. 2017) ......... 7, 10, 22

*Public Citizen, Inc. v. FERC*, 839 F.3d 1165 (D.C. Cir. 2016) ..................................... 5

*Sacramento Municipal Utility District v. FERC*, 474 F.3d 797
    (D.C. Cir. 2007) ........................................................................................... 13

*Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881
    (9th Cir. 2005) (en banc) ............................................................................... 23

*Solar Energy Industries Ass'n v. FERC*, 80 F.4th 956 (9th Cir. 2023) .................... 4–5

*Solutions for Utilities, Inc. v. California Public Utilities Commission*,
    No. 11-cv-4975, 2022 WL 1741128 (C.D. Cal. Mar. 9, 2022) ............................. 22

*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) .................................................. 12

*Tennessee Gas Pipeline Co. v. FERC*, 860 F.2d 446 (D.C. Cir. 1988) ...................... 13

*Transmission Agency of Northern California v. FERC*, 628 F.3d 538
    (D.C. Cir. 2010) ...................................................................................... 5, 13

*Vote Solar v. City of Farmington*, 2 F.4th 1285 (10th Cir. 2021) .............................. 22

*Whirlpool Corp. v. Marshall*, 445 U.S. 1 (1980) ...................................................... 14

*Winding Creek Solar LLC v. Peterman*, 932 F.3d 861 (9th Cir. 2019) ....... 2, 11, 19, 22

**STATUTES**

16 U.S.C. § 796(17)(A) ............................................................................................ 17

16 U.S.C. § 796(17)(A)(i) ................................................................................... 16–17

16 U.S.C. § 796(17)(A)(ii) ....................................................................................... 16

16 U.S.C. § 796(17)(C) ....................................................................................... 16–17

16 U.S.C. § 796(17)(D) ....................................................................................... 16–17

16 U.S.C. § 824a-3 ............................................................................................ 1, 4–5

16 U.S.C. § 824a-3(a) ................................................................................................ 5

16 U.S.C. § 824a-3(b) ............................................................................................. 5–6

16 U.S.C. § 824a-3(c) .......................................................................................... 5, 17

16 U.S.C. § 824a-3(d) ................................................................................................ 6

16 U.S.C. § 824a-3(f) ............................................................................................... 23

16 U.S.C. § 824a-3(g)(1) ...................................................................................... 7, 10

16 U.S.C. § 824a-3(g)(2) ............................................................. 7, 10, 24

16 U.S.C. § 824a-3(h)(2) ............................................................. 7

16 U.S.C. § 824a-3(h)(2)(A) ....................................................... 23

16 U.S.C. § 824a-3(h)(2)(B) .......................................... 10–11, 22–23

16 U.S.C. § 824a-3(*l*) .............................................................. 16–17

16 U.S.C. § 824e ...................................................................... 13

A.R.S. § 30-807(A) .................................................................. 10

A.R.S. § 30-808 ....................................................................... 8

A.R.S. § 30-808(A) .................................................................. 10

A.R.S. § 30-809 ....................................................................... 8

A.R.S. § 48-2302 ..................................................................... 7

A.R.S. § 48-2334 ..................................................................... 1

A.R.S. § 48-2334(A)(2) ............................................................ 8

A.R.S. § 48-2334(A)(3) ............................................................ 7

A.R.S. § 48-2334(B)(1) ............................................................ 7

A.R.S. § 48-2334(B)(2) ............................................................ 7

A.R.S. § 48-2334(B)(3) ............................................................ 7

A.R.S. § 48-2334(C) ................................................................. 7

A.R.S. § 48-2334(D) ................................................................. 8

A.R.S. § 48-2334(D)(3) ............................................................ 7

**RULES AND REGULATIONS**

Fed. R. Civ. P. 12(b)(1) ............................................................ 1

Fed. R. Civ. P. 12(b)(6) ............................................................ 1

18 C.F.R. § 292.101(b)(6) ......................................................... 6

18 C.F.R. § 292.304(b)(2) ....................................................... 5–6

18 C.F.R. § 292.304(b)(6) ....................................................... 6, 21

18 C.F.R. § 292.304(b)(7)(i) .................................................... 6, 21

18 C.F.R. § 292.304(b)(7)(ii) .................................................................... 6

18 C.F.R. § 292.304(b)(8) ................................................................... 6, 21

18 C.F.R. § 292.304(b)(8)(i)(A) .............................................................. 21

18 C.F.R. § 292.304(b)(8)(i)(B) .............................................................. 21

18 C.F.R. § 292.304(b)(8)(i)(C) .............................................................. 21

18 C.F.R. § 292.304(b)(8)(i)(D) .............................................................. 21

18 C.F.R. § 292.304(b)(8)(i)(E) .............................................................. 21

18 C.F.R. § 292.304(d)(1)(i) ...................................................... 4, 6–7, 20

18 C.F.R. § 292.304(d)(1)(ii) ..................................................... 4, 6–7, 20

18 C.F.R. § 292.304(d)(1)(iii) .................................................................. 21

18 C.F.R. § 292.304(e)(2) ............................................................. 6, 11, 21

18 C.F.R. § 292.304(e)(2)(i) ...................................................................... 6

18 C.F.R. § 292.304(e)(2)(ii) ..................................................................... 6

18 C.F.R. § 292.304(e)(2)(iii) .................................................................... 6

18 C.F.R. § 292.304(e)(2)(iv) .................................................................... 6

18 C.F.R. § 292.305(a)(1) .......................................................................... 5

18 C.F.R. § 292.305(a)(1)(ii) ........................................................ 13, 16–17

18 C.F.R. § 292.305(a)(2) .............................................................. 5, 14–15

**OTHER AUTHORITIES**

*Qualifying Facility Rates and Requirements: Implementation Issues
Under the Public Utility Regulatory Policies Act of 1978*, Order No.
872, 172 FERC ¶ 61,041 (2020) ......................................................... 6

Salt River Project Agricultural Improvement and Power District, Salt
River Project Agricultural Improvement and Power District Board
Meeting Notice and Agenda—Amended 1 (Oct. 25, 2024),
https://www.srpnet.com/assets/srpnet/pdf/about/governance-
leadership/district-meetings/20241029_WSS_agenda.pdf ..................... 2

*Webster's Third New International Dictionary* (1961) ............................... 17

**MOTION TO DISMISS**

Defendant Salt River Project Agricultural Improvement and Power District ("SRP") moves to dismiss the first amended complaint, ECF No. 17 ("FAC"), both for lack of subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6).

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

This case involves Section 210 of the Public Utility Regulatory Policies Act of 1978 ("PURPA"), which Congress enacted during the oil crisis to encourage renewable energy production.  *See* 16 U.S.C. § 824a-3.  The statute requires the Federal Energy Regulatory Commission ("FERC") to fashion regulations requiring utilities to purchase the output of small renewable power production facilities and pay an amount for that power that would leave their customers indifferent between renewable power and conventional power.  The states and utilities like SRP are "afford[ed] … latitude in determining the manner in which the regulations are to be implemented."  *FERC v. Mississippi*, 456 U.S. 742, 751 (1982).

SRP is a political subdivision of the State of Arizona governed by a publicly elected board that provides electricity to approximately one million retail customers in the Phoenix area. SRP complies with PURPA by offering a choice of four different rate options for residential customers with solar panels.  These options were adopted following a 2019 statutory "pricing process," pursuant to Arizona Revised Statutes ("A.R.S.") § 48-2334, that was open to the public, conducted in accordance with statutorily prescribed administrative procedures, and subject to judicial review in state court.

Plaintiffs, two individuals and two advocacy organizations, are dissatisfied with these options.  They want to be able to select from among the rate plans that are available to customers without residential solar panels, while in addition selling any excess electricity they generate to SRP at a rate higher than the law requires.  Plaintiff challenged SRP's rates before FERC, but FERC declined to take any enforcement action.  They now come to this Court and ask for an injunction requiring SRP to adopt the particular rate plan

they demand, as well as disgorgement of amounts that SRP would not have collected had their preferred plan been in place since 2019.[1]

The case should be dismissed.  For starters, this Court lacks jurisdiction under PURPA as plaintiffs are, in substance, collaterally attacking the results of SRP's 2019 pricing process.  Their challenges thus may be brought only in state court in accordance with state law.  Their complaint also seeks relief that federal courts cannot provide, such as a directive to SRP to adopt specific rates and a request for disgorgement.  "It is not [a federal] court's job to fashion a new [PURPA rate] to [a plaintiff's] liking." *Winding Creek Solar LLC v. Peterman*, 932 F.3d 861, 866 (9th Cir. 2019).  Moreover, the organizational plaintiffs lack a cause of action, because they do not allege that they themselves produce solar electricity.

On the merits, plaintiffs primarily recycle an argument that Judge Brnovich has already rejected: that SRP's rates are "discriminatory" because different rates are available to customers who generate a portion of their electricity with rooftop solar panels (and export excess electricity to SRP's system) than to customers who do not.  *See Ellis v. Salt River Project Agric. Improvement & Power Dist.*, No. 19-cv-1228, 2022 WL 3552392, at *2 (D. Ariz. Aug. 18, 2022).  This argument fails for at least three reasons.

First, in making this argument, plaintiffs focus on one element of their rates: a fixed monthly service charge.  But plaintiffs cannot establish that a rate is discriminatory by focusing on how one element of their rates differs from other customers' rates, while ignoring the other elements.  Plaintiffs also allege that two of the available rates include a

---

[1] In December 2024, SRP will commence a new pricing process that will consider proposed changes to SRP's rates, including for residential solar customers.  The outcome of that process may well moot this case, or at the very least require further amendment of the complaint.  Once it is underway, SRP intends to file a motion to stay this case until the process is complete in the spring of 2025.  *See* SRP, Salt River Project Agricultural Improvement and Power District Board Meeting Notice and Agenda—Amended 1 (Oct. 25, 2024), https://www.srpnet.com/assets/srpnet/pdf/about/governance-leadership/district-meetings/20241029_WSS_agenda.pdf.

"demand charge" that allegedly is "difficult to understand and respond to." FAC ¶ 26. But that conclusory allegation does not establish discrimination. In sum, Plaintiffs do not adequately allege that their rates, taken as a whole, are discriminatory.

Second, plaintiffs' claim fails for the reasons given by Judge Brnovich, who explained that numerous differences—in energy usage, grid demands, and the nature of the commercial relationship—"readily distinguish between Solar and Non-Solar Customers." *Ellis*, 2022 WL 3552392, at *3. Therefore, SRP's adoption of different rate options for different classes of residential customers "does not treat similarly situated individuals differently," as required to state a cognizable discrimination claim. *Id.* at *7. In particular, solar customers use the grid differently than non-solar customers: They self-generate the electricity they need and export any excess onto SRP's grid when sunshine is sufficient, and they take from the grid at other times. *See id.* at *3–4. As a result, they have different load- and cost-related characteristics than other customers. Nothing in PURPA (or any other law) requires SRP to charge differently situated classes of customers the same rates.

Moreover, the rule against discriminatory rates applies only to electricity sold *to qualifying facilities*—that is, electricity sold to meet the power needs of the renewable power production facility. But plaintiffs do not allege that their rooftop solar panels consume any electricity at all. Instead, they conflate their solar panels with their residences as a whole—but neither the statute nor any FERC regulation concerns the rate charged for electricity used to power residential appliances like air conditioning, refrigerators, and swimming pools.

Plaintiffs also claim that two of the four challenged rates pay them too little for the electricity they export to the grid when their rooftop solar panels generate a surplus. FAC ¶ 27. That claim fails for multiple reasons.

First, plaintiffs concede that SRP needs to offer only one PURPA-compliant option, FAC ¶ 35, and plaintiffs do not allege that the compensation under the other two rates is too low.

3

Second, even as to the two rates plaintiffs say pay them too little, plaintiffs misstate the law.  They claim they are entitled to be paid "full avoided costs," FAC p. 17, ¶ C, which they say includes payment for "capacity" in addition to payment for the actual energy they deliver to SRP, FAC ¶¶ 15, 19.  Under FERC regulations, however, a qualifying facility is only paid for capacity if it enters a legally enforceable obligation, such as a contract, to provide a defined amount of electricity to the utility over a specified term.  But plaintiffs have no such obligation.  Instead, they and other residential solar customers export electricity onto SRP's grid only when their generation exceeds their own use.  They are thus not entitled to any payment for avoided costs associated with capacity.  Rather, under FERC regulations, they are entitled to be paid only for the avoided costs associated with the energy they make available.  *See* 18 C.F.R. § 292.304(d)(1)(i)–(ii).

Third, and relatedly, Plaintiffs allege that the compensation SRP pays for their electricity is not based on a method FERC has permitted.  FAC ¶ 29.  But they allege no facts supporting a plausible conclusion that use of any method specified in FERC regulations would have yielded compensation greater than SRP already pays, as required to state a claim.

The FAC should be dismissed in its entirety.

## STATEMENT

### A.    Statutory And Regulatory Background

In response to the 1970s energy crisis, PURPA was enacted in 1978 "to promote energy conservation, improve energy efficiency, lower consumer costs, and decrease reliance on foreign oil."  *Solar Energy Indus. Ass'n v. FERC*, 80 F.4th 956, 969 (9th Cir. 2023) (internal quotation marks omitted) ("*SEIA*").  Section 210 of PURPA, 16 U.S.C. § 824a-3, promotes these objectives by directing FERC to "prescribe, and from time to time thereafter revise, such rules as it determines necessary to encourage" the development of "qualifying facilities" ("QFs"), including small power production facilities that generate renewable energy.  *SEIA*, 80 F.4th at 975; *see also id.* ("[T]he statute gives FERC broad

discretion to evaluate which rules are necessary to encourage QFs and which are not."). Section 210(a) directs FERC to promulgate rules requiring electric utilities to both sell electricity *to* QFs and purchase it *from* QFs at rates that are "just and reasonable," "in the public interest," and non-discriminatory.  16 U.S.C. § 824a-3(a)–(c).  At the same time, while PURPA tasks FERC with the development of nationwide rules, section 210(f) makes state regulators and utilities "primarily responsible for implementing FERC's rules."  *SEIA*, 80 F.4th at 970.

   ***Non-discriminatory sales of electricity to QFs.***  Pursuant to PURPA section 210, 16 U.S.C. § 824a-3, FERC promulgated regulations that require rates for sales to QFs to be "just and reasonable" as well as "in the public interest," and to "not discriminate against any qualifying facility in comparison to rates for sales to other customers served by the electric utility."  18 C.F.R. § 292.305(a)(1).  Those regulations make clear that, if QFs and non-QFs are differently situated, they can be charged different rates:

> Rates for sales which are based on accurate data and consistent systemwide costing principles shall not be considered to discriminate against any qualifying facility to the extent that such rates apply to the utility's other customers with similar load or other cost-related characteristics.

*Id.* § 292.305(a)(2); *see also, e.g.*, *Transmission Agency of N. Cal. v. FERC*, 628 F.3d 538, 549 (D.C. Cir. 2010) ("*TANC*").[2]

   ***Avoided-cost pricing for purchases from QFs.***  PURPA's regulations also require utilities purchasing electricity *from* QFs to pay them at a rate equal to the utility's "avoided cost."  18 C.F.R. § 292.304(b)(2).  The term "avoided cost" refers to "the cost to the …

---

[2]  Thus, contrary to plaintiffs' assertion, there is no "default assumption," FAC ¶ 16, that QFs and non-QFs must be charged the same rate for the electricity sold to them.  Nor is there any "high bar," FAC ¶ 17, that a utility must clear to show that a rate is non-discriminatory.  Indeed, the FAC does not cite any FERC order for that point, instead relying on a concurring (and thus non-binding) opinion of two commissioners.  FAC ¶ 17 & nn.13–14; *cf. Pub. Citizen, Inc. v. FERC*, 839 F.3d 1165, 1169 (D.C. Cir. 2016) ("[A]n agency's authority runs to it as an entity apart from its members, and it is its institutional decisions—none other—that bear legal significance." (internal quotation marks omitted)).

utility of the electric energy which, but for the purchase from [the QF], such utility would generate or purchase from another source." 16 U.S.C. § 824a-3(d).[3]  Avoided-cost pricing ensures that customers—who ultimately pay for the electricity QFs produce—are economically indifferent between the utility's purchase of electricity from a QF versus a different source.  *See Qualifying Facility Rates and Requirements: Implementation Issues Under the Public Utility Regulatory Policies Act of 1978*, Order No. 872, 172 FERC ¶ 61,041, at P 344 (2020).  In particular, FERC has noted that "one of the *fundamental premises* of PURPA" is that "QFs must accept the market risk associated with their projects by being paid no more than the purchasing utility's avoided cost, *thereby preventing utility retail customers from subsidizing QFs*."  *Id.* (emphasis added).

There is no single methodology for calculating avoided cost; FERC's regulations provide "a great deal of flexibility" to state regulators and utilities in calculating avoided costs.  *Indep. Energy Producers Ass'n v. Cal. Pub. Utils. Comm'n*, 36 F.3d 848, 856 (9th Cir. 1994) (internal quotation marks omitted).  For example, a utility may rely on the spot market price for electricity, *see* 18 C.F.R. § 292.304(b)(6), (7)(i); it may determine its avoided costs by considering ("to the extent practicable") ten enumerated factors, *see id.* § 292.304(b)(2), (e)(2), (e)(2)(i)–(iv); or it may use one of several other options in FERC's regulations, *see id.* § 292.304(b)(7)(ii), (8).

In calculating avoided costs, those regulations distinguish between energy sold by QFs to the utility on an "as-available" basis—that is, whenever the electricity happens to be available—and energy and capacity sold by QFs under a legally enforceable obligation, such as a contract.  18 C.F.R. § 292.304(d)(1)(i)–(ii).  Rooftop solar customers (including the two individual plaintiffs here) sell their output on an as-available basis, making available to SRP only the electricity they produce in excess of what their residence is

---

[3]  The statute uses the term "incremental cost," 16 U.S.C. § 824a-3(b), (d), while FERC's regulations use "[a]voided cost" and "avoided costs," *e.g.*, 18 C.F.R. §§ 292.101(b)(6), 292.304(b)(7)(i).  These terms are synonymous.  *See id.* § 292.101(b)(6).

consuming.  They do not, that is, have any legally enforceable obligation to guarantee delivery to SRP of any particular amount of output at any particular time.  Accordingly, under the regulations, the relevant avoided cost is the avoided cost of *energy*, not the avoided cost inclusive of capacity, as the FAC alleges.  *Compare id.*, *with* FAC ¶ 19 (claiming the avoided-cost rate "must also include avoided capacity prices").

*Judicial review.*  As elaborated below, "[s]tate-based adjudication serves as the mainstay for enforcing PURPA rights." *Portland Gen. Elec. Co. v. FERC*, 854 F.3d 692, 698 (D.C. Cir. 2017).  Specifically, state courts have exclusive jurisdiction over: (1) claims that a utility is failing to abide by state rules implementing PURPA; (2) challenges to state proceedings implementing PURPA; and (3) equivalent claims against utilities (like SRP) that PURPA classifies as "nonregulated" (because their rates are not subject to the jurisdiction of state utility commissions).  *See* 16 U.S.C. § 824a-3(g)(1)–(2).  A federal court, by contrast, has jurisdiction over a suit brought by FERC seeking to compel a state regulator or nonregulated utility to implement FERC's regulations.  *Id.* § 824a-3(h)(2).  Only a QF or utility may petition FERC to undertake such an enforcement action, and if FERC declines, it may pursue such cases in federal court in FERC's stead.  *Id.*

## B.    Factual Background

As noted, SRP is a political subdivision of Arizona that delivers electric power to customers in metropolitan Phoenix.  FAC ¶ 11; *see* A.R.S. § 48-2302.  SRP's electricity rates are set by its publicly elected board through a public pricing process.  That process requires SRP to give public notice that it is considering changes to its rates (which includes direct mailing to SRP customers), A.R.S. § 48-2334(A)(3), (B)(1), and to make relevant data, reports, and recommendations available for public inspection, *id.* § 48-2334(B)(2), (C).  SRP's board then holds a public hearing at a specified time and place.  *Id.* § 48-2334(B)(3).  "[I]nterested persons," including SRP customers, may "make oral presentations of views, questions and comments" at the hearing.  *Id.* § 48-2334(D)(3).  They may also file written comments during the ten days following the board's public

hearing.  *Id.* § 48-2334(A)(2), (D).  Judicial review of the board's decisions is available in state court.  *Id.* §§ 30-808 to -809.

Plaintiffs are Solar United Neighbors and Vote Solar (the "organizational plaintiffs"), as well as Karen Schedler and Jeremy Helms (the "individual plaintiffs").  FAC ¶¶ 7–10.  The individual plaintiffs are residential customers of SRP.  FAC ¶¶ 9–10.  Each one's home has a rooftop solar photovoltaic system—*i.e.*, solar panels that generate electricity consumed by the home.  *Id.*  When these systems generate more electricity than the home is consuming, plaintiffs export the excess to SRP's system.  FAC ¶¶ 9–10, 27.

SRP offers four pricing options to solar residential customers to accommodate (1) their self-supply of electricity when there is sufficient sunshine; (2) their reliance on SRP's system when they need more electricity than their solar systems can generate; and (3) their export of electricity to SRP's system when their systems generate more than they can use or store in their homes.  These four options, which were adopted as part of SRP's 2019 pricing process, are known as E-13, E-14, E-15, and E-27.  FAC ¶¶ 23–24.[4]

**E-15 and E-27.**  The E-15 and E-27 plans are "net metering" rates that consist of three elements: (1) a fixed monthly service charge; (2) a per-kilowatt ("kW") demand charge that is based on the customer's highest peak-hour electricity usage during the monthly billing period; and (3) a per-kilowatt-hour ("kWh") charge for energy.  FAC ¶¶ 22–23.  The third component is calculated by netting the total kWh of electricity that a customer draws from SRP's system in a monthly billing period against the total kWh that the customer exports to SRP's system in that period.  ECF No. 1, Exs. E, G.[5]  If, on net, the customer *consumes* electricity from SRP's system during that billing period, the customer pays for the net amount consumed at the applicable per-kWh rate.  *Id.*  If instead

---

[4]  The FAC notes that the E-27 rate was first created in 2015 but revised in 2019.  FAC ¶¶ 22–23.  Thus, all the options at issue were adopted in the 2019 process.

[5]  The pricing plans were attached to plaintiffs' original complaint, ECF No. 1, as Exhibits D (E-13), E (E-15), F (E-14), and G (E-27), and are incorporated by reference into their amended complaint.  *See* FAC ¶ 23 nn.23–26.

the customer, on net, *delivers* electricity to SRP during the period, SRP pays the customer for that net generation at the same per-kWh rate.

Plaintiffs claim that the fixed monthly service charge in the E-15 and E-27 price plans is discriminatory because it is higher than the comparable charge in pricing plans available to non-solar customers. FAC ¶ 25. They also allege that "most residential customers find [it] difficult to understand and respond to" the per-kW demand charge, and that no such charge is imposed on non-solar customers. FAC ¶ 26.

**E-13 and E-14.** The E-13 and E-14 price plans also each consist of three elements. The first two elements are a fixed monthly service charge and a per-kWh charge for the total kWh of electricity drawn from SRP's system during each monthly billing period. FAC ¶ 25. The third element is that SRP pays the customer for the total kWh of excess electricity exported by the customer's solar system onto SRP's system during the billing period. FAC ¶ 27.

Plaintiffs allege that the fixed monthly service charge in the E-13 and E-14 plans is discriminatory because it is higher than the fixed monthly service charge applied under pricing plans available to non-solar customers. FAC ¶ 25. They also allege that the "export rate" (for the third element described above) is unlawful because it is "lower than SRP's full avoided cost," and because it is not based on any method for calculating avoided costs that FERC has approved. FAC ¶¶ 27, 29.

Both individual plaintiffs have taken service under the E-13 rate since commissioning their solar systems. FAC ¶¶ 9–10. They allege that they are prohibited from taking service under pricing plans available to customers without solar systems, which they claim to prefer. FAC ¶ 30.

As relief, the FAC seeks (among other things) an injunction requiring SRP: to offer service to solar customers under the same price plans available to non-solar customers, FAC p. 17, ¶ B; to "purchase electricity from residential customers at its full avoided costs," FAC p. 17, ¶ C; and to "disgorge the difference between the monthly fixed charges

it collected from Plaintiffs … and what it would have collected under the price plans applicable to non-solar customers," FAC p. 17, ¶ D.

## ARGUMENT

### I. This Court Lacks Subject-Matter Jurisdiction Over Plaintiffs' Claims Concerning SRP's Rates.

Plaintiffs bear the burden to establish this Court's subject-matter jurisdiction. *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021). They cannot do so because the FAC is, in substance, a challenge to the 2019 pricing process that must be brought in state court. It thus seeks relief beyond what a federal court may provide.

"State-based adjudication serves as the mainstay for enforcing PURPA rights"; the statute gives federal courts only a "limited role." *Portland Gen.*, 854 F.3d at 698. In particular, PURPA provides exclusive state-court jurisdiction for challenges "respecting any proceeding" conducted by a state regulatory authority or nonregulated electric utility "for purposes of implementing any requirement of a rule" promulgated by FERC under the statute. 16 U.S.C. § 824a-3(g)(1). PURPA also provides "exclusive" state-court jurisdiction over actions seeking to require utilities to abide by a State's implementation of PURPA. *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 388 (5th Cir. 2014); *see* 16 U.S.C. § 824a-3(g)(2).[6]

By contrast, PURPA gives federal courts limited authority to require a state regulator or nonregulated utility to "implement" PURPA's rules if it has not done so. 16 U.S.C. § 824a-3(h)(2)(B). A QF or utility must first petition FERC to initiate such an action, and if FERC declines, "the petitioner may [sue] in [federal] court to *require such State regulatory authority or nonregulated electric utility to comply with such*

---

[6] A state-court challenge, however, would need to overcome a state-law exhaustion requirement and time bar requiring an application for rehearing to be filed within 20 days and a suit to be brought within 30 days after the denial of rehearing. *See* A.R.S. §§ 30-807(A), 30-808(A). Although the application of those provisions presents a question for state-court adjudication, SRP's position is that the time to challenge the 2019 pricing process in state court has long since expired.

*requirements*, and such court may issue such injunctive or other relief as may be appropriate." *Id.* (emphasis added).

This case had to be brought in state court, under section 210(g)(1), because, in substance, it challenges the 2019 pricing process that resulted in SRP's current price plans. *See* FAC ¶¶ 25–29; *see also* p. 10 n.7, *supra*.  For example, plaintiffs ask this Court to "enjoin SRP to offer service to residential customers with solar under all price plans available to non-solar residential customers," FAC p. 17, ¶ B, and to order SRP to "disgorge the difference between the monthly fixed charges it collected from Plaintiffs … and what it would have collected under the price plans applicable to non-solar customers," FAC p. 17, ¶ D.  That is tantamount to asking this Court to unwind the 2019 ratemaking decision by SRP's elected board and substitute a judicially determined rate.  But "nothing in the statutory scheme provides [a federal] Court with rate-making authority." *Allco Renewable Energy Ltd. v. Mass. Elec. Co.*, 875 F.3d 64, 74 (1st Cir. 2017) (internal quotation marks omitted).  As the Ninth Circuit has explained, "[i]t is not [a federal] court's job to fashion a new contract to [a QF's] liking." *Winding Creek*, 932 F.3d at 866; *see also Exelon*, 766 F.3d at 389–90 (federal courts lack jurisdiction to order a state regulator to apply a rule to a QF in a particular way).

Plaintiffs also ask this Court to determine SRP's avoided-cost rate and "enjoin SRP to purchase electricity from residential customers at its full avoided costs."  FAC p. 17, ¶ C.  But under PURPA, "states play the primary role in calculating avoided costs," *Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 417 (6th Cir. 2007), and state regulators and utilities are free to select among several different methods for determining avoided costs, *see* 18 C.F.R. § 292.304(e)(2) (enumerating ten factors to be considered by a regulator or utility, "to the extent practicable," in setting the avoided-cost rate). Accordingly, the Ninth Circuit has observed that "federal courts are neither statutorily authorized nor competent to set avoided-cost rates."  *Winding Creek*, 932 F.3d at 866; *accord Allco*, 875 F.3d at 74 (affirming a district court's decision to "decline[] to engage

in fact-finding to determine the proper avoided cost rate" (internal quotation marks omitted)).

In sum, plaintiffs have demanded relief that a federal court cannot provide—confirming that their suit is, in substance, the kind of challenge that should have been brought in state court. Accordingly, this Court lacks jurisdiction, and the first amended complaint must be dismissed.

## II.   Plaintiffs Fail To Plausibly Allege A Violation Of PURPA.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual [content] to state a claim to relief that is plausible on its face." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (internal quotation marks omitted). A complaint that merely "offers 'labels and conclusions, … a formulaic recitation of the elements of a cause of action[,]' or 'naked assertion[s]' devoid of 'further factual enhancement' will not suffice." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Plaintiffs' allegations fall into two buckets, one concerning sales of electricity *to* solar customers and one concerning purchases of electricity *from* solar customers.

First, as to each of the four pricing plans available to them, plaintiffs allege that SRP discriminates against them in the rates it charges for the electricity it sells to them. According to plaintiffs, that is because one component of their bill, the fixed monthly service charge, is higher than for customers without solar installations. FAC ¶ 25. Plaintiffs further allege that the E-15 and E-27 rates each "impose[s] a demand charge that most residential customers find difficult to understand and respond to." FAC ¶ 26. Relatedly, plaintiffs allege discrimination based on the unavailability to them of SRP's E-21 rate, which plaintiffs claim "is beneficial to customers" but available only to customers without solar installations. FAC ¶ 30.

Second, as to the E-13 and E-14 tariffs, plaintiffs allege that SRP does not pay an avoided-cost rate for the electricity plaintiffs generate and export to SRP's system. They

allege that the export rate SRP pays under these two tariffs is "lower than SRP's full avoided cost," FAC ¶ 27, which they define to include a payment for capacity as well as for the energy itself, FAC ¶¶ 15, 19.

None of these allegations states a plausible PURPA claim.

### A.  Plaintiffs Fail To State A Plausible Claim That SRP Charges Them A "Discriminatory" Rate For The Electricity They Buy From SRP.

Plaintiffs have no viable claim that SRP "discriminates" against residential solar customers by requiring them to select from pricing options that have a higher fixed monthly service charge than the plans available to other residential customers.  *See* FAC ¶¶ 24–25, 36–37.  That is so for at least two reasons.  First, as Judge Brnovich explained in *Ellis*, residential customers with solar panels are differently situated in numerous respects than those without them.  Applying different pricing structures to two differently situated customer classes is not discriminatory.  Second, the regulatory provision on which plaintiffs rely applies only to the *qualifying facility*, not to other property or other facilities owned by the same person.  Here, the solar panels are the QFs—not plaintiffs' residences.  Yet plaintiffs' discrimination claim concerns the pricing plan applicable to their residential consumption.  Indeed, plaintiffs do not allege that their solar installations consume any electricity at all.

#### 1.  *Plaintiffs do not adequately allege discriminatory rates.*

Plaintiffs do not plausibly allege that the rates they pay for electricity are discriminatory.  FERC's regulations provide that electricity rates "[s]hall not discriminate against any [QF] in comparison to rates for sales to other customers served by the electric utility."  18 C.F.R. § 292.305(a)(1)(ii).  In the electricity-rate-setting context, *see, e.g.*, 16 U.S.C. § 824e, to discriminate means to give disparate treatment to those "similarly situated."  *See TANC*, 628 F.3d at 549; *Sacramento Mun. Util. Dist. v. FERC*, 474 F.3d 797, 802 (D.C. Cir. 2007); *Tenn. Gas Pipeline Co. v. FERC*, 860 F.2d 446, 452 n.9 (D.C. Cir. 1988).  Consistent with that definition, the regulations make clear, as noted, that

"[r]ates for sales which are based on accurate data and consistent systemwide costing principles shall not be considered to discriminate against any qualifying facility to the extent that such rates apply to the utility's other customers *with similar load or other cost-related characteristics*."    18 C.F.R.  § 292.305(a)(2)  (emphasis  added).    Thus, discrimination in selling power to QFs occurs only when there is some other *similarly situated* customer that, by virtue of not being a QF, pays a lower rate.[7]

Under this definition, plaintiffs' allegations do not state a claim for several reasons. As an initial matter, plaintiffs focus narrowly on comparing the fixed monthly service charges applicable to solar and non-solar customers.  But the fixed monthly service charges form only one component of the total bill.  There is also a volumetric charge.  And plaintiffs concede that solar customers pay "*lower* volumetric (*i.e.*, per kilowatt hour) charge[s] than SRP's flat rate plans."  FAC ¶ 22 (emphasis added).  Plaintiffs thus do not plausibly allege that, *considered as a whole* (*i.e.*, a higher monthly service charge paired with a lower volumetric charge), their rates are discriminatory.  Nor do they plausibly allege that they would pay SRP less if they were served on a non-solar rate.  Put simply, plaintiffs cannot state a discrimination claim by cherry-picking just one element of the rate they pay and ignoring the remainder.

Even focusing solely on the fixed monthly service charges, plaintiffs do not state a viable claim.  As *Ellis* held, solar and non-solar customers are not similarly situated with respect to the demands and costs they impose on the electric system.  That is why Judge Brnovich dismissed an equal-protection claim similarly premised on the notion that SRP discriminated against solar customers by adopting different pricing plans for solar customers than for non-solar customers.  *See Ellis*, 2022 WL 3552392 at *2–7.  Like plaintiffs here, the *Ellis* plaintiffs claimed that E-27's monthly service charges

---

[7]  The term "discriminate" is interpreted similarly in other contexts. *See, e.g.*, *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 286–87 (2011) (railroads); *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 19 (1980) (occupational safety); *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003) (Title VII).

"discriminat[ed]" against them because they paid higher rates despite supposedly being "similarly situated" to non-solar customers.  *Id.* at *2.

The court rejected the premise that solar and non-solar customers are "identical in all relevant respects and, therefore, should be treated th[e] same."  *Ellis*, 2022 WL 3552392, at *3.  As the court explained, there were "numerous differences between these two" groups that made "the Solar Customers … distinguishable from the Non-Solar Customers."  *Id.*  First, because solar customers generate some of their own power, their "energy usage" from the grid is less than that of non-solar customers.  *Id.*  Second, solar customers impose different "grid demands" on SRP, as they sometimes "draw energy from the grid" but other times "generate excess energy, which the grid must absorb."  *Id.*  And third, the "nature of [the] commercial relationship" was different as between the two types of customers, since a typical customer only purchases energy from SRP, whereas a customer with a solar installation both purchases energy from and sells energy to SRP.  *Id.*  The court concluded that "these differences readily distinguish between Solar and Non-Solar Customers."  *Id.*

Plaintiffs' discrimination claim here fails for the same reasons.  As *Ellis* held, they are differently situated than non-solar customers.  Plaintiffs do not deny that (1) their rooftop solar systems reduce their energy consumption from the grid at certain times of day (*e.g.*, when the sun is shining brightly) but not other times (*e.g.*, at night); (2) they impose different demands on the grid because, unlike non-solar customers, they oscillate between consumption from and exports to the grid; or (3) their commercial relationship with SRP is different because they are both *buyers* of energy from and *sellers* of energy to SRP.  *See* FAC ¶ 27.  Plaintiffs thus are not similarly situated to non-solar residential customers, so have failed to make the requisite "prima facie showing that similarly situated individuals were treated differently."  *Ellis*, 2022 WL 3552392, at *5.  As in *Ellis*, "[t]his alone warrants dismissal" of their discrimination claim.  *Id.*; *see* 18 C.F.R. § 292.305(a)(2).

Nor can plaintiffs survive dismissal by making conclusory allegations of discrimination and then trying to place the burden on SRP to justify differential treatment.

*See* FAC ¶ 25.  The Supreme Court squarely rejected that practice in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), explaining that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  Plaintiffs thus bear the burden of alleging facts showing that the rates are not merely different but *discriminatory*, and they cannot satisfy that burden without alleging facts establishing the predicate for the claim—namely, that they are similarly situated to non-solar customers with respect to their load- or cost-related characteristics.  They make no such allegation.

### 2. *Plaintiffs do not allege that their QFs pay discriminatory rates.*

The FAC fails to state a discrimination claim for another, independent reason.  FERC's regulations only prohibit a utility from "discriminat[ing] *against any qualifying facility* in comparison to rates for sales to other customers served by the electric utility."  18 C.F.R. § 292.305(a)(1)(ii) (emphasis added).  A "qualifying facility" is a facility that *produces energy* by means of a designated method such as solar power, wind, or biomass.[8]  Thus, for example, a solar field may rely on electrical equipment that rotates solar panels to track the sun, and it may draw power from the grid to power that equipment.  Likewise, a biomass generator—which burns biomass in a boiler to create steam—may use electricity in that combustion process.  Section 292.305(a)(1) ensures that electricity sold to power that solar field or biomass generator is sold at a non-discriminatory rate.  Here, however, plaintiffs do not allege that their *solar installations* consume any electricity at all.  Therefore, they cannot state a discrimination claim under the plain terms of the FERC

---

[8]  The definitions of "small power production facility," "qualifying small power production facility," and "qualifying small power producer" come from "section 3(17) and (18) of the Federal Power Act."  16 U.S.C. § 824a-3(*l*).  Those provisions, in turn, define "qualifying small power production facility" as a "small power production facility" that both "produces electric energy solely by the use, as a primary energy source, of biomass, waste, renewable resources, geothermal resources, or any combination thereof," *id.* § 796(17)(A)(i), (C), and "has a power production capacity … not greater than 80 megawatts," *id.* § 796(17)(A)(ii).  A "qualifying small power producer," in turn, "means the owner or operator of a qualifying small power production facility."  *Id.* § 796(17)(D).

regulations.[9]

Plaintiffs try to paper over this fatal defect by conflating themselves and their residences with the solar installations on their rooftops. *See* FAC ¶ 34 ("Residential solar customers, including plaintiffs Schedler and Helms, are qualifying facilities … ."); FAC ¶ 35 (equating "residential solar customers" with "qualifying facilities"). But only the solar installations are QFs. PURPA distinguishes between the owner of a QF and the QF itself. *See* 16 U.S.C. § 824a-3(*l*); *id.* § 796(17)(A), (C)–(D) (distinguishing "qualifying small power production facility" from "qualifying small power producer"). Plaintiffs themselves are not "qualifying facilities." Nor are plaintiffs' residences QFs, because their residences do not produce any electric energy. A homeowner's decision to co-locate a solar panel on the rooftop of her residence does not transform the entire residence—the refrigerator, the air conditioner, and so forth—into a qualifying small power production facility governed by PURPA.

Again, the regulation governing non-discriminatory sales applies to sales to "any qualifying facility," 18 C.F.R. § 292.305(a)(1)(ii), which is a "facility" that "produces electric energy" through specified means, 16 U.S.C. § 796(17)(A)(i). The term "facility" is not defined in PURPA or the Federal Power Act (*see* p. 16 n.9, *supra*), so it has its "ordinary, contemporary, common meaning." *Delaware v. Pennsylvania*, 598 U.S. 115, 128 (2023) (internal quotation marks omitted). That meaning is "something … that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end," *Facility*, *Webster's Third New International Dictionary*

---

[9] The regulations faithfully implement the statute. Just as the regulations limit the prohibition on discriminatory sales to sales made to the qualifying facility, the statute states that FERC's regulation "shall insure that, in requiring any electric utility to offer to sell electric energy to any … qualifying small power production facility, the rates for *such sale*— … (2) shall not discriminate against … qualifying small power producers." 16 U.S.C. § 824a-3(c) (emphasis added). In other words, the prohibition on discriminatory sales is limited to "such sale"—the sale of "electric energy *to any ... qualifying* small power production *facility.*" *Id.* (emphasis added).

812–13 (1961)—here, to produce energy. The "particular function" of a residence, by contrast, is to provide shelter, not to produce power. Indeed, the FAC suggests that plaintiffs' homes existed long before plaintiffs installed solar panels. *See* FAC ¶¶ 9–10. Only the solar panels and related infrastructure connecting those panels to the grid were actually constructed and installed to perform the function of producing electricity. Therefore, only those are the relevant "facilit[ies]" for purposes of PURPA. And, again, plaintiffs do not allege that those facilities consume any electricity. Accordingly, plaintiffs cannot state a claim that the sale of power to those facilities is discriminatory.

**B.** **Plaintiffs' Allegations About "Difficult To Understand" Charges And Lack Of Access To "Beneficial" Tariffs Cannot Support A PURPA Claim.**

Plaintiffs also allege that the E-15 and E-27 tariffs are discriminatory because they "impose a demand charge that most residential customers find difficult to understand and respond to." FAC ¶ 26. This vague allegation is insufficient to state a claim of discrimination. Plaintiffs do not explain what is "difficult to understand" or "respond to" about the demand charge (which is calculated based on a customer's peak consumption), or how they could possibly know what "most residential" customers think about it. Notably, they do not allege that *they* find the demand charge difficult to understand or respond to, nor even that they have ever taken service under the rate or made any effort to educate themselves about it. (To the contrary, they allege they take service under the E-13 rate. FAC ¶¶ 9–10.) What is more, plaintiffs point to nothing in PURPA prohibiting a demand charge, nor any standard relating to how easily a QF owner must be able to understand or respond to a tariff. And while E-15 and E-27 each includes a demand charge, they also each offer QFs concrete benefits, such as net metering and lower per-kWh charges. *Compare* ECF No. 1, Exs. D, F (E-13 and E-14 pricing plans), *with* ECF No. 1, Exs. E, G (E-15 and E-27 pricing plans). As FERC does not regulate whether retail rates must be easily understood by customers (let alone how to make that determination), this particular grievance does not state a legally cognizable claim. And regardless of what

18

FERC regulates, plaintiffs' complaint would fail under *Iqbal*, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678.

Plaintiffs likewise fail to support their PURPA claim with the allegation that "residential customers with solar panels are precluded" from taking service under SRP's E-21 tariff, which is allegedly "beneficial to customers." FAC ¶ 30. Plaintiffs themselves cannot even agree on what is "beneficial to customers": Plaintiff Helms preferred the E-21 rate prior to installing solar, while plaintiff Schedler preferred E-23. FAC ¶¶ 9–10, 30.

In any event, as the FAC admits, plaintiffs have no right under PURPA to take service under either the E-21 or E-23 tariffs, so long as they have a PURPA-compliant option available to them. *See* FAC ¶ 35. Plaintiffs assert in conclusory fashion that "exclusion from beneficial tariffs available to non-solar customers … unlawfully discriminates in violation of FERC's rules," FAC ¶ 30, but they do not explain why, or what FERC rules they are referring to, or what they mean when they say the E-21 tariff is "beneficial." That is not enough to state a claim. Indeed, neither the E-21 nor the E-23 tariffs provides for any purchase of customer-generated solar power whatsoever, so it is not even *plausible* to contend that plaintiffs would do better under that rate; nor, for the same reason, would either be a PURPA-compliant rate.

### C. Plaintiffs Fail To State A Claim That SRP Purchases Excess Electricity At A Rate Below Its Avoided Costs.

Finally, Plaintiffs assert that the E-13 and E-14 rates violate FERC regulations because they purchase excess customer-generated electricity at a rate that is "lower than SRP's full avoided cost." FAC ¶ 27. That allegation also fails to state a viable claim.

For starters, plaintiffs make no such allegation regarding the E-15 and E-27 rates, which is dispositive given plaintiffs' acknowledgement that SRP can comply with PURPA by "provid[ing] residential solar customers … access to *at least one tariff* that meets all of the requirements of FERC's rules." FAC ¶ 35 (emphasis added); *accord Winding Creek*,

932 F.3d at 862.  As discussed, the E-15 and E-27 rates meet all those requirements.  So plaintiffs' claim would fail even if they were correct that the purchase rate under the E-13 and E-14 rates is less than SRP's avoided cost.

But they are not correct.  Most fundamentally, plaintiffs assert that SRP must offer a rate equal to its "full avoided cost," which plaintiffs assert includes compensation for "capacity" as well as energy.  FAC ¶¶ 15, 19; FAC p. 17, ¶ C.  "Capacity" is the ability to produce energy whenever called upon; utilities procure capacity to ensure that their systems are capable of meeting peak demand plus a reserve.  *Conn. Dep't of Pub. Util. Control v. FERC*, 569 F.3d 477, 479 (D.C. Cir. 2009).  Under FERC's regulations, however, QFs must be compensated for capacity only if they take on a "legally enforceable obligation"—such as a contractual commitment—to stand ready to or otherwise supply electricity at agreed-to amounts and times over a "specified term," so that the utility can account for the QF in its capacity planning.  18 C.F.R. § 292.304(d)(1)(ii).  Solar customers like plaintiffs, however, do not take on any legally enforceable obligation.  They make no commitment to supply energy to the system when SRP needs it, nor at any particular time or in any particular amount.  Instead, they make electricity available to SRP only "when those customers' solar panels generate more electricity than their household consumes *in that instant*."  FAC ¶ 27 (emphasis added).  In FERC's language, plaintiffs supply power on an "as-available" basis, meaning the "rates for such purchases shall be based on the electric utility's avoided cost *for energy* calculated at the time of delivery."  18 C.F.R. § 292.304(d)(1)(i) (emphasis added).  SRP is thus under no obligation to compensate plaintiffs at an avoided-cost rate that includes capacity.

Plaintiffs "avoided cost" theory fails for other reasons, too.  The FAC asserts that the export rate plaintiffs are paid under E-13 and E-14 is unlawful because it "does not reflect SRP's marginal cost of electricity," and plaintiffs allege that "SRP still relies on … other sources of electricity" with higher marginal costs.  FAC ¶ 28.  Yet plaintiffs do not allege that their excess solar output is available at the same time of day that SRP relies on

the higher-marginal-cost generation.  If not (for example, if SRP relies on that generation after the sun sets and solar panels no longer generate electricity), then SRP cannot avoid those higher marginal costs by purchasing excess solar power from plaintiffs.

The FAC also alleges that the export rate plaintiffs are paid "does not meet any of the optional methods of determining avoided costs under FERC's rules."  FAC ¶ 29.  This theory is likewise deficient.  Plaintiffs acknowledge that SRP *did* use one such method: a competitive-solicitation process.  FAC ¶ 28; *see* 18 C.F.R. § 292.304(b)(8).  To get around this fact, the FAC recites the regulatory requirements for such a process and asserts, in conclusory manner, that the solicitation process failed to satisfy them—for instance, because it was allegedly insufficiently "transparent" and "open."  FAC ¶ 29; *see* 18 C.F.R. § 292.304(b)(8)(i)(A)–(E).  But plaintiffs cannot state a claim by asserting generally a lack of transparency; they must explain what about the process lacked transparency.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  They do not do so.

Finally, the FAC fails to plead with any specificity that the export rate paid to plaintiffs is less than what any of the optional methods would produce.  For example, plaintiffs do not allege that the rate is less than the spot market price for electricity, a benchmark that presumptively complies with the avoided-cost requirement.  *See* 18 C.F.R. § 292.304(b)(6), (7)(i), (d)(1)(iii).  Nor do plaintiffs allege that the export rate could not be justified under the ten factors enumerated in 18 C.F.R. § 292.304(e)(2).  *Compare* FAC ¶ 19 (acknowledging that this is an acceptable method), *with* FAC ¶ 29 (not mentioning section 292.304(e)(2)).  These omissions confirm that plaintiffs' avoided-cost theory does not state a plausible claim for relief.

### III.   Plaintiffs Request Relief That Is Unavailable Under PURPA.

Plaintiffs' prayer for relief asks this Court to "enjoin SRP to offer service to [plaintiffs] under all price plans available to non-solar residential customers."  FAC p. 17, ¶ B.  It also requests that the Court "[o]rder [SRP] to disgorge the difference between the monthly fixed charges it collected from Plaintiffs" and "what it would have collected under

the price plans applicable to non-solar customers."  FAC p. 17, ¶ D.

As discussed above, the nature of the relief requested shows that the FAC is in substance a collateral attack on a state ratemaking process that belongs in state court, and this Court lacks jurisdiction over the case. *See* Part I, *supra*.  But even if this Court had jurisdiction over the case as a whole, there are still elements of the requested relief that it could not grant.  Plaintiffs' claims should be dismissed to the extent they seek these forms of relief.

The most plaintiffs could obtain from this Court is an order directing SRP to devise a facially compliant rate plan.  *See Winding Creek*, 932 F.3d at 866 ("It is not [a federal] court's job to fashion a new contract to [a QF's] liking." (citing *Allco*, 875 F.3d at 74)).  That is because federal courts acting on PURPA claims review only "whether the utilit[y's] implementation was successful on its face," and "[i]f so, the utility has satisfied its federal obligation."  *Vote Solar v. City of Farmington*, 2 F.4th 1285, 1290 (10th Cir. 2021); *accord Portland Gen.*, 854 F.3d at 698–700; *Exelon*, 766 F.3d at 388; *Greensboro Lumber Co. v. Ga. Power Co.*, 643 F. Supp. 1345, 1371–75 (N.D. Ga. 1986), *aff'd*, 844 F.2d 1538 (11th Cir. 1988).  Put simply, plaintiffs cannot obtain an order from a federal court requiring SRP to offer them service on a particular set of terms.

Disgorgement is likewise unavailable.  Section 210 of PURPA authorizes only "appropriate" relief.    16  U.S.C.  § 824a-3(h)(2)(B).   But determining the proper disgorgement award would require a federal court to determine the applicable rates under a PURPA-compliant rate scheme, which—as explained—is not something a federal court is authorized to do.  *See Allco*, 875 F.3d at 74 ("[N]othing in the statutory scheme provides [a federal] Court with rate-making authority, and it lacks the expertise to do so." (internal quotation marks omitted)).  That form of relief is therefore not "appropriate."  A claim for monetary relief is available, if at all, "in state court only."  *Sols. for Utils., Inc. v. Cal. Pub. Utils. Comm'n*, No. 11-cv-4975, 2022 WL 1741128, at *2 (C.D. Cal. Mar. 9, 2022).  Moreover, a plaintiff may sue in federal court only after first asking FERC to bring suit to

22

1   enforce its regulations against the state commission or utility.  16 U.S.C. § 824a-3(h)(2)(B).

2   If FERC fails to act, then the plaintiff may bring suit in FERC's stead.  Because a plaintiff

3   in such an action is standing in FERC's shoes to enforce FERC's own regulations,

4   "appropriate" relief is limited to the relief that FERC itself could obtain—and no case

5   suggests that FERC can obtain disgorgement in a PURPA enforcement action.

6           Disgorgement is independently unavailable here because it is inherently "tethered

7   to a wrongdoer's net unlawful profits."  *Liu v. SEC*, 591 U.S. 71, 80 (2020).  Here, there

8   are no profits nor any unjust enrichment.  SRP, a political subdivision of Arizona, is a not-

9   for-profit entity.  Its rates are set based on the cost of providing service.  If SRP collects

10  less from plaintiffs, then it must make up the difference by collecting more from other

11  customers.  So the disgorgement plaintiffs describe would not come from SRP's (non-

12  existent) profits; it would come from higher rates charged to other SRP customers.  That is

13  likewise not "appropriate" relief.  16 U.S.C. § 824a-3(h)(2)(B).

14  **IV.    At A Minimum, The Organizational Plaintiffs Must Be Dismissed.**

15          As noted, PURPA empowers FERC to enforce against state regulatory authorities

16  the requirement to implement FERC's rules.  *See* 16 U.S.C. § 824a-3(f), (h)(2)(A).

17  PURPA also provides that "[a]ny electric utility, qualifying cogenerator, or qualifying

18  small power producer may petition [FERC] to enforce th[at] requirement."  *Id.* § 824a-

19  3(h)(2)(B).  If FERC does not act on a petition, "the petitioner" can sue in federal court.

20  *Id.*

21          The appropriate plaintiff in a private federal action is thus limited to those qualified

22  to petition FERC.  But only electric utilities, qualifying co-generators, and qualifying small

23  power producers are authorized to petition FERC.  *See CAlifornians for Renewable Energy*

24  *v. Cal. Pub. Utils. Comm'n*, No. 23-55291, 2024 WL 4511609, at *1 (9th Cir. Oct. 17,

25  2024).  Hence, only those entities may sue in district court if FERC does not.  Congress's

26  explicit listing of who *may* sue is an *exclusion of others* from suing.  *Silvers v. Sony Pictures*

27  *Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc).  Otherwise, Congress's enumeration

of permitted entities would be superfluous—and courts must "construe [a] statute … to avoid superfluities." *ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1210 (9th Cir. 2015) (citing *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004)). Indeed, underscoring the limits on who has a *federal* cause of action, PURPA's state-suit provision more broadly allows "[a]ny person" to sue, 16 U.S.C. § 824a-3(g)(2).

The FAC does not allege that either organizational plaintiff is itself a QF owner or operator; instead, the FAC is clear that they are advocacy organizations, FAC ¶¶ 7–8. Accordingly, they each lack a cause of action in federal court.

## CONCLUSION

The first amended complaint should be dismissed for lack of jurisdiction or for failure to state a claim.

Dated:  November 20, 2024

Respectfully submitted,

*/s/ Matthew E. Price*

Christopher E. Babbitt (*pro hac vice*)
Daniel S. Volchok (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, DC 20037
Tel: (202) 663-6000
Fax: (202) 663-6363
christopher.babbitt@wilmerhale.com
daniel.volchok@wilmerhale.com

Matthew E. Price (*pro hac vice*)
Suedeen G. Kelly (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, N.W., Suite 900
Washington, DC 20001
Tel: (202) 639-6000
Fax: (202) 639-6066
mprice@jenner.com
skelly@jenner.com

24

**CERTIFICATE OF CONFERRAL**

The undersigned attorney certifies that, before filing this motion, SRP notified Plaintiffs of the issues it asserts and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by Plaintiffs.

*/s/ Matthew E. Price*
Matthew E. Price

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF system, which will send a notice of filing to all counsel of record who have consented to service by electronic means.

Dated:  November 20, 2024

*/s/ Matthew E. Price*
Matthew E. Price